## Ex Parte Diaz (a) Martillo.

Solicitud para que se expida mandamiento de habeas corpus

No. 33.—Resuelto en Junio 16, 1904.

Constitución de los Estados Unidos.—Para que la Constitución de los Estados Unidos se entienda vigente en Puerto Rico es necesaria una Ley del Congreso que expresa ó tacitamente la haga extensiva á tal territorio.

Id.—Gran Jurado—Tribunales Insulares.—Las disposiciones del artículo 5 de las enmiendas á la Constitución de los Estados Unidos no tienen aplicación á los Tribunales Insulares, en los que no es necesaria la acusación de un Gran Jurado para que en ellos pueda declararse culpable á un acusado.

Id.—Los Tribunales Insulares de Puerto Rico no tienen el carácter de Cortes Federales á los efectos de las disposiciones contenidas en la 5ª y 6ª enmiendas á la Constitución de los Estados Unidos.

Habeas Corpus—Procedimientos Irregulares ó Defectuosos—Sentencia Nula.—Las disposiciones del artículo 461 del Código de Enjuiciamiento Criminal no pueden ser invocadas, ni tener aplicación alguna, en un procedimiento de Habeas Corpus, pues cualesquiera que sean los errores cometidos en el procedimiento, no pueden ser considerados en un recurso de tal naturaleza, á no ser que afecten la jurisdicción del Tribunal y envolvieran la completa nulidad de la sentencia.

Debido Proceso Legal—Igual Protección Legal.—Una persona que haya sido juzgada y convicta de acuerdo con las leyes que tienen igual aplicación á

todos los ciudadanos en general y cuyo juicio se hubiere seguido con suje-
ción al procedimiento regular y de ordinaria aplicación, no puede alegar
que en su caso no haya habido el debido proceso legal, ni que se le haya ne-
gado el dercho á que se le confiriera igual protección legal.

Habeas Corpus—Juicio Rápido—Errores de Procedimiento.—Siendo materia
de disposición estatutaria, y no constitucional, el derecho otorgado á todo
acusado en Puerto Rico para que su juicio se celebre con toda rapidez, las
Cortes tienen amplia facultad en este sentido y cualesquiera que fueren los
errores en que incurrieren con respecto al particular serían ellos errores de
procedimiento que no pueden ser considerados en un recurso de Habeas
Corpus.

Id.—Legalidad de la Prisión—Apelación—Recurso por Causa de Error.—
En un recurso de habeas corpus no pueden resolverse otras cuestiones que las
que afecten á la legalidad ó ilegalidad de la prisión que estuviere sufriendo
el peticionario, sin que sea lícito utilizar tal recurso á los efectos de una
apelación ó de un recurso por causa de error.

Id.—Cuestiones de Procedimiento.—Cuestiones de procedimiento como las
que envuelven las disposiciones de los artículos 142 y 143 del Código de En-
juiciamiento Criminal, y las que se refieren á la elección del jurado y á la
admisión ó denegación de pruebas, no pueden considerarse en un procedi-
miento de habeas corpus.

Id.—Modo de Preparar la Solicitud.—Las solicitudes de habeas corpus no de-
ben contener materias extrañas al procedimiento, debiendo limitarse á
aquéllas que puedan ser consideradas por el Tribunal.

Id.—Jurisdicción Sobre la Persona del Acusado y Sobre el Delito.—En los
casos en que apareciere que el Tribunal tenía jurisdicción sobre la persona
del acusado y sobre el delito de que fuera acusado, la solicitud de excarcela-
ción por habeas corpus deberá denegarse.

Los hechos están expresados en la apinión.

Abogado del peticionario: Sr. Ramos, (Juan R.)

Abogado del Pueblo, Sr. del Toro, Fiscal.

El Juez Asociado Sr. MacLeary, emitió la opinión del
Tribunal.

El día 26 de Agosto de 1902 ocurrió un motín en el pueblo
de Humacao. Se llevó á cabo un ataque contra cierta Far-
macia que era conocida como el sitio de reunión de uno de los
Partidos políticos, verificándose dicho ataque por turbas que
se suponían estar formadas por el peor elemento del otro
partido. Durante esta reyerta ó motín tres personas fueron
muertas y varias heridas. Entre las muertas se encontraba
Octavio Reyes Guzman. Se llevaron á cabo varias investi-
gaciones con el fin de conocer las circunstancias que dieron

origen á este motín, y parecía difícil obtener testimonios sobre el mismo. Al fín, el día 25 de Noviembre de 1902, se presentó una acusación contra Pedro Diaz, llamado vulgarmente "Martillo," imputándole el asesinato de Reyes, y se le leyó debidamente la acusación, declarándose no culpable. Se siguió el juicio de la causa y se le declaró culpable de asesinato en primer grado, sentenciándosele á muerte. De esta sentencia apeló para ante este Tribunal, y después de la debida consideración, la sentencia de la corte inferior fué confirmada.

Contra la anterior sentencia no se interpuso apelación alguna para ante el Tribunal Supremo de los Estados Unidos. Presentóse una instancia al Gobernador, solicitando el indulto del prisionero Diaz, y se decretó la suspensión por treinta días á fin de obtener mayor tiempo para investigar el caso.

El día 10 de Mayo de 1904, el Sr. Juan R. Ramos, abogado del peticionario presentó esta solicitud de habeas corpus. En su solicitud consigna nueve fundamentos distintos en los que basa la alegación de que debe concederse el mandamiento interesado. Esos fundamentos ó motivos son los siguientes:

1. Que habiéndose presentado, en veinte y nueve de Diciembre de 1902, acusación contra el peticionario Pedro Diaz (a) Martillo, por el Sr. Fiscal por delito de asesinato en 1er. grado, cometido en la persona de Octavio Reyes Guzmán, en la noche del 26 de Agosto del propio año, no fué sometido el acusado, exponente en esta solicitud, para *indictment* ante un gran jurado, faltando así al mandato expreso consignado en el *5th Amendment* (Enmienda 5ª) de la Constitución de los Estados Unidos que dice: "Ninguna persona puede ser acusada de delito que apareje la pena capital, ó de cualquier Felony, á menos que esto se haga por medio de un *indictment* ante un Gran Jurado; excepción hecha de aquellos casos que tuvieren lugar en las fuerzas de mar ó tierra ó en la milicia, cuando ésta estuviere de servicio activo, en tíempo de guerra, ó de amenaza al Estado.

II. Que habiéndose señalado por la Corte el 13 de Enero de 1903 para la lectura de la acusación (arraignment), y habiendola

negado el reo, se le concedió un plazo hasta el día 21 del propio mes para que la contestara, á su abogado defensor; quien además solicitó se requiriera al Sr. Fiscal para que entregase la lista de testigos de que intentaba éste valerse en el acto del juicio, según se lo ordenaba el artículo 142 del Código de Enjuiciamiento Criminal; cuya lista no presentó el Sr. Fiscal, á pesar de haber sido requerido para ello, viéndose obligado el abogado defensor á presentar la contestación á la acusación sin que se cumpliera ese precepto imperativo de nuestra ley, con perjuicio de un derecho sustancial del acusado: cuyo extremo consta con toda claridad y evidencia en la copia del acta y los documentos, enviados por la Secretaría de la Corte de Distrito de Humacao.

III.   Que, apesar de lo expuesto en el anterior hecho, se señaló el día 16 de Febrero de 1903 para la celebración del juicio, ante el pequeño Jurado, y llegado ese día, con infracción del artículo 448 de nuestro Código de Enjuiciamiento se suspendió dicha celebración, sin que se dictara resolución alguna motivada y sin solicitarlo el acusado, apesar de estar funcionando el Jurado y de estar constituido allí un ''panel'' en número suficiente para formar dicho Jurado, como lo comprueba que en esos mismos días se vieron dos causas por asesinato en 1er. grado, por crímenes cometidos, uno precisamente la noche del 26 de Agosto en Humacao, y otro en Yabucoa: Contra cuya resolución, que ni siquiera se consigna en autos, reclamó la representación del exponente, interesando la celebración del juicio, sino el día señalado, por lo menos el 21 de Febrero del propio mes ya con el ''panel'' que estaba reunido, ya con otro que se sacase á la suerte: á cuyo escrito no recae resolución alguna, ni siquiera negativa, apareciendo una providencia, en la que, sin consignar causa alguna justificada, se señala el día 18 de Mayo, recayendo esta resolución el 28 de Abril.' Se privó, así, al exponente del derecho que la Constitución de los Estados Unidos y leyes de Puerto Rico le dan á tener un juicio rápido, como también de otro derecho sacratísimo consignado en la 14th Amendment (Enmienda 14) de la ya citada Constitución, cual es el de que ningún ciudadano puede ser privado de su libertad, vida ó hacienda, sin que se llenen todos los requisitos de la Ley.

IV.   Que del artículo 191 de nuestro Código de Enjuiciamiento Criminal, se desprende el derecho sustancial que tenía el acusado á ser oído y juzgado por un Jurado, surgido de la lista de los Jurados en ejercicio, y sin embargo, se le obligó á ser juzgado por un Jurado que surgió de la lista de los doscientos, que habría de for-

marse el 1er Lúnes del mes de Abril de 1903, por los comisionados nombrados, en la forma prescrita en los Artículos 191 al 196 inclusive; cuya lista debería contener el nombre de los Jurados que ejercerían este cargo el año subsiguiente al nombramiento de los comisionados. Es así, pues, que el exponente fué juzgado en 18 de Mayo de 1903, por un Jurado, que resultó elegido por suerte entre los doscientos que formaron las nuevas listas hechas por los comisionados en Abril del propio año de 1903, luego fué oido y juzgado por un Jurado que no tenía competencia, porque debió funcionar desde Mayo de 1904 á Abril de 1905, que era el año subsiguiente al nombramiento de los comisionados, para formar la lista de los doscientos Jurados entre los vecinos del distrito que fueran capacitados. Todo lo que se acredita con la certificación que se acompaña con el No. 1.

V. Que señalado como antes se dijo, el día 16 de Febrero para la celebración del juicio oral, fué transferido este para el día 18 de Mayo de 1903 transcurriendo con tal transferencia, sin existir justa causa, ciento cuarenta días, sin ser sometido á juicio el acusado, lo que debió haberse hecho dentro de los ciento veinte, después de presentada la acusación; por lo que debió haber sido sobreseída la causa, que al exponente se le seguía, y haberse formulado nueva acusación por tratarse de un delito ''Felony,'' según el artículo 452 de nuestra ley de enjuiciar. Se infringieron por lo tanto el artículo 448 del Enjuiciamiento Criminal y la 14th amendment de la Constitución, y como consecuencia, la sentencia dictada por la Corte en méritos del veredicto de culpabilidad es ilegal y la prisión que sufre el peticionario también ilegal, ya por incompetencia del Jurado que le juzgó, ya porque debió haberse sobreseído la causa. Todo lo cúal consta en la copia del acta del juicio y diligencias de investigación del hecho y fué objeto de alegación por la defensa, que á nombre del exponente sostuvo el Recurso de Apelación ante esta Corte, pero de lo que se hizo caso omíso, con infracción de la sección 1ra. de la ley de 12 de Marzo de 1903, que convirtió la Corte Suprema en Corte de apelación en vez de Casación, que hasta entonces había sido.

VI. Que interesada por el Letrado defensor del exponente la traida al proceso, que contra él se seguía, por certificación librada de la causa seguida contra Luis Delgado y otros por delito de Perjurio, en donde constaban declaraciones de los dos únicos testigos de cargo, con cuyas declaraciones se tendía á comprobar la falsedad con que esos testigos se produjeron en la causa contra el exponente,

ésta fué negada, apesar de la relación intima que guardan ambos procesos: resultando infringidos los artículos 244 y 245 del Código de Enjuiciamiento Criminal y por lo tanto perjudicado el acusado en cuanto á su derecho sustancial de comprobar la veracidad con que se expresaban los testigos en su contra. Cuya acta era la única prueba que podía utilizar la defensa del exponente, porque las diligencias de investigación de los sucesos de la noche del 26 de Agosto practicadas por el Juez de Paz Don Francisco Lopez Cepero Nater y por Don Andrés B. Crosas, fueron remitidas al Hon. Attorney General, por resultarle cargos al Capitán y algunos Policias, en cuyas oficinas parece se extraviaron: como lo comprueba, que ni aún el representante del Pueblo de Puerto Rico, pudo utilizarlas, en la causa seguida contra el exponente y en otra seguida contra el policía Girona por delito de asesinato en ler, grado; á cuyas diligencias estaban agregadas las importantisimas de autopcias de los interfectos, en aquella noche de general conflagración en Humacao.

VII.　Que apesar de haberse interesado en tiempo y forma legal un nuevo juicio por la defensa del exponente, le fué éste negado, infringiéndose los artículos 301 y 305 del Código de Enj. Criminal que reconoce ese derecho sustancial para la defensa del acusado, y por tanto infringiéndose también el Artículo 461 del mismo cuerpo legal.

VIII.　Que fué objeto, casi principal, del Recurso de apelación deducido contra la sentencia recaída en la causa contra el exponente, la negativa del juicio, declarándose sin lugar dicho recurso por razones de apreciaciones particulares, desde luego que no resultan del acta del juicio, según se vé en la sentencia definitiva, cuya lectura interesa el exponente en la vista de las diligencias de este Habeas Corpus, quedando agregada á ellas, una copia librada por Secretaría.

IX.　Que consignándose en la sección catorce de la ley Orgánica de 12 de Abril de 1900, votada por el Senado y Camara de Representantes, que las Leyes estatutarias de los Estados Unidos que no sean localmente inaplicables, salvo lo que en contrario dispusiere la presente, tendrán la misma fuerza y validéz en Puerto Rico que en los Estados Unidos, excepción hecha de las Leyes de rentas internas, las cuales en virtud de lo dispuesto en la sección tres, no tendrán fuerza y validez en Puerto Rico, es evidente que al decretar la Asamblea Legislativa de Puerto Rico la ley de Jurados, debió crear el Gran Jurado y sí lo omitió en nuestro Código de Enjuiciamiento Criminal y en la Ley de 12 de Enero de 1901 estableciendo el juicio

por Jurados en Puerto Rico, es evidente que no se atemperó á ese precepto constitucional, que dá derecho al exponente á que su indictment se viera ante un gran Jurado: con mayor razón después de haber declarado el Tribunal Supremo de los Estados Unidos, en el caso de la Srta. Gonzalez, que los puertorriqueños no son extrangeros respecto de los Estados Unidos.

Por cuyas razones y después de haber sido demostrado,

I. Que el exponente está ilegalmente preso en virtud de una sentencia y veredicto contrarios á la Constitución y leyes de los Estados Unidos.

II. Que así mismo está ilegalmente preso el exponente, por ser nulo el veredicto con arreglo á las leyes de Puerto Rico; y

III. Que siendo el veredicto nulo la Corte de Humacao no tenia jurisdicción para imponer la sentencia que impuso al peticionario.

En el alegato que presentó en el juicio, el abogado cambio los fundamentos de su solicitud y presentó el caso bajo un nuevo aspecto, imputando los seis errores siguientes, que supone cometidos; á saber:

*Primero.*—''Infracción de la Enmienda 5a. de la Constitución de los Estados Unidos que dice: ''Ninguna persona puede ser acusada de delito que apareje la pena capital, ó de cualquier otro ''Felony,'' á menos que, la acusación se haga por medio de un indictment ante el Gran Jurado; excepción hecha de aquellos casos que tuvieren lugar en las fuerzas de mar ó tierra, ó en la milicia, cuando ésta estuviere de servicio activo, en tiempo de guerra, ó de amenaza al Estado. United States Constitution, 5th Amendment.

Una persona sentenciada y confinada en prisión por delito ''Felony,'' sin que se haya presentado su caso para indictment ante el Grand Jury, puede solicitar, y tiene derecho á que se decrete en su favor, un auto de habeas corpus.

Ex parte Wilson, 114 U. S. 417.
In re Bain 121 U. S. 1.

El Bill Foraker dice, en su sección 14, que las leyes estatutarias de los Estados Unidos, tendrán la misma fuerza y validez en Puerto Rico que en los Estados Unidos; excepción hecha de las leyes de

Rentas Internas. Y rigiendo la Constitución en Puerto Rico, en su parte prohibitiva, y por consiguiente en lo que respecta á los derechos individuales de un ciudadano puertorriqueño, es evidente que se ha infringido, no solo la Enmienda 5a. antes citada, sino también ese precepto consignado en nuestra Ley Orgánica.

El famoso jurisconsulto Americano Mr. Dane, quien como miembro del Congreso Nacional tomó parte activa en la famosa ordenanza de 1787, para el gobierno del territorio Noroeste, cree no admite discusión el que informaciones ó acusaciones hechas por el Fiscal, directamente á la Corte, puedan hacerse en casos que aparejan la pena capital ó en "Felonies," sin que se infrinja la Enmienda 5a. de la Constitución de los Estados Unidos. Esta clase de informaciones, dice el distinguido jurisconsulto, deben hacerse por el Ministerio Fiscal al Gran Jury, por medio de indictments.

> 7 Dane Abr. 280.
> Cooley Const. Limit. pgg. 291.

*Segundo*: Infracción del Art. 461 de nuestra Ley de Enjuiciar Artículo 461. Código de Enj. Crim.

"Un error de procedimiento cometido por el Tribunal sentenciador, justifica la revocación de la sentencia ó un auto de habeas corpues siempre y cuando perjudique los derechos sustanciales del acusado.

> People vs. Murback, 64 Cal. 370.
> Ex parte Bernert 62 Cal. 529.
> People vs. Nelson, 56 Cal. 77.

*Tercero.*—Una Corte de un Territorio, diferente de una corte de un Estado, es una corte de los Estados Unidos, y por consiguiente, una Corte Territorial, que está comprendida dentro de la enmienda 5a. así como dentro de la 7a. de la Constitución de los Estados Unidos.

*Cuarto.*—Infracción de la enmienda 14 de la Constitución de los Estados Unidos, y del derecho que las leyes de Puerto Rico dán á todo individuo; cual es, el de que ningún ciudadano puede ser privado de su libertad, vida ó hacienda sin que se llenen todos los requisitos de la ley.

> U. S. Constitution 14th Amendment.

*Quinto.*—Infracción de uno de los grandes derechos concedidos por la Constitución de los Estados Unidos á todo acusado, cual es el de exigir que éste tenga un juicio rápido.

"Este mandato expreso de la Constitución," (dice Mr. Cooley en su tratado en Constitutional Limitations) tiende al más alto fin de justicia. En países como el nuestro (sigue el comentarista), donde los acusadores públicos son elegidos por el pueblo, ó designados por el Gobierno por un período de tiempo determinado, se hace necesario ese principio constitucional que declara, que cuando un individuo desea y quiere ser juzgado rápidamente, no hay tardanza que sea razonable en cuanto al Ministerio Fiscal, con excepción hecha del tiempo necesario para obtener la comparecencia de testigos.

> Cooley on Const. Limit. pags. 439 et seq.
> In re Bergeron 133 Cal. 349.

La Corte Suprema del Estado de Georgia en el caso de Watts vs. el Estado dice:

"Aunque debe dejarse bastante al buen juicio de los fiscales en estos casos y si bien es verdad que la corte no obligaría al Gobierno á aparecer en juicio en la primera convocatoria de Jurados, sin èmbargo, y ápesar de lo expuesto, el representante del Estado, debe manifestar, bajo declaración jurada las causas que tuviere para no poder estar en disposición de acudir al juicio, y si de la declaración jurada se desprende que hay causa justa para ello entonces y solo entonces se pospondrá el juicio.

> Watts vs. the State 26 Georgia 231.
> Cooley on Const. Limit. pp. 440-441.

Y aun hay cortes que han ido más lejos. El ya citado comentarista Mr. Cooley dice en sus comentarios: que la Corte Suprema de Montana en el caso de Estados Unidos contra Sacramento declaró que no era suficiente para posponer un juicio ya señalado, declaración jurado prestada por el ministerio público, diciendo que el Estado no estaba preparado para el juicio. Que se necesitaba una declaración más específica en la que, además de alegarse que el Estado no estaba preparado, se incluyeran los nombres de los testigos, los pasos dados por el Ministerio público para asegurar la compare-

cencia de estos, y los particulares que se proponía probar este funcionario con sus declaraciones. Para que, si lo deseaba el acusado, pudiera éste dar por probados dichós particulares, y obtener de esta manera que el juicio se llevara á cabo sin dilación alguna.

> U. S. vs. Sacramento 2 Montana 239.
> Cooley Const. Limit. 441.
> And see: In re Garvey 7 Colorado 502.

*Sexto.—El* fallo dictado por esta Corte Suprema es irregular y nulo por las razones antes mencionadas, por lo que al dictar dicho fallo y sentencia en contra del peticionario, confirmando así la dictada por la Corte de Distrito de Humacao, ha perjudicado al peticionario en sus derechos sustanciales.

Examinaremos, primeramente, el caso, siguiendo el orden indicado por el ilustrado abogado en su argumento oral, y en su alegato escrito, presentado en este caso, y que acabamos de copiar en su integridad.

*La primera* razón que en su alegato presenta el abogado para que se decrete la excarcelación del prisionero consiste en que se ha infringido durante el juicio la 5ª Enmienda á la Constitución de los Estados Unidos por no haber mediado acusación del Gran Jurado. Repetidamente ha sido resuelto por este Tribunal, en armonía con resoluciones del Tribunal Supremo de los Estados Unidos, y de otras autoridades, que la Constitución de los Estados Unidos no ha sido hecha extensiva expresamente á Puerto Rico, y es bien sabido que en esta isla no existe el sistema del Gran Jurado, por lo menos en lo que hace referencia á los tribunales insulares.

Por el artículo IX del Tratado de París se ha estipulado expresamente que:

"Los derechos civiles y la condición política de los habitantes naturales de los territorios aquí cedidos, (incluyendo á Puerto Rico) á los Estados Unidos se determinarán por el Congreso."

Por cerca de cuatro meses con anterioridad á la promul-

gación de este tratado, un Gobierno Militar había tenido dominio absoluto de la Isla de Puerto Rico, y continuó con tal dominio hasta el primero de Mayo de 1900, cerca de quince meses después de aquélla promulgación, en cuya última fecha fué sustituido por el Gobierno Civil establecido por la Ley del Congreso llamada vulgarmente Ley Foraker. Durante la época del Gobierno Militar, y desde el establecimiento del Gobierno Civil, muchas personas acusadas han sido juzgadas y condenadas á pena de Presidio, y algunas condenadas á la pena de muerte, y ejecutadas, únicamente, por virtud de la acusación Fiscal, y sin la intervención del Gran Jurado. La institución conocida en el derecho común de Inglaterra con el nombre de Gran Jurado, no ha sido nunca conocida en esta isla, excepción hecha de la Corte Federal, para la cual la Ley Foraker la ha establecido especialmente.

No hay nada en la ley Foraker que expresamente indique la intención del Gobierno de hacer extensivos á esta Isla los beneficios de la Constitución de los Estados Unidos, y aunque varios casos han sido sometidos al Tribunal Supremo de los Estados Unidos en los que este particular se encontraba incidentalmente comprendido, nunca ha habido, sin embargo, una sentencia de esa Corte que directamente resuelva esta cuestión. Pero en varias opiniones se ha enunciado el principio de que un Territorio extrangero no ha de considerarse incorporado á los Estados Unidos, ni ha de considerarse tampoco que la Constitución de los Estados Unidos tiene aplicación en tal territorio, hasta que por una ley del Poder Legislativo se declare, ya expresamente, ó ya por necesaria deducción, que tal incorporación, ó tal vigencia de la constitución, existe. Casos Insulares sobre las tarifas, 182 U. S. 1 á 391.

En el caso de Hawaii y Mankichi (190 U. S. 197), resuelto hace como un año, el Tribunal Supremo de los Estados Unidos resolvió que la quinta y sexta enmienda á la Constitución americana, que prescriben que la presentación de acusa-

ciones se haga por un gran Jurado, y que el juicio de las causas se celebre ante un pequeño Jurado, no estuvieron en vigor en las Islas del Hawaii, durante el periodo comprendido entre el 12 de Agosto de 1898, fecha de la anexión, y el cuatro de Junio de 1900, fecha del establecimiento del Gobierno Territorial, á pesar del hecho de que en la Resolución Conjunta del Congreso, que dispuso la anexión de aquellas islas, distintamente se expresaba que:

·La Legislación Municipal de las Islas del Hawaii, que no se haya promulgado para el cumplimiento de los tratados extinguidos en la forma dicha, y que no sea incompatible con esta resolución conjunta, *ni sea contraria á la constitución de los Estados Unidos,* ni á ningun tratado de los Estados Unidos que esté en vigor, permanecerá vigente hasta que el Congreso de los Estados Unidos determine lo contrario.''

Aceptada esta opinión como correcta interpretación de la ley, qué otra cosa podría resolverse entonces sino que dichas enmiendas no están en vigor, ni lo han estado nunca, en Puerto Rico, toda vez que la ley orgánica de Puerto Rico, llamada comunmente la Ley Foraker, aprobada por el Congreso en 12 de Abril de 1900, no dice nada con respecto á la Constitución americana, declarando sencillamente que:

''Las Leyes y ordenanzas de Puerto Rico actualmente en vigor, continuarán vigentes, excepto en los casos en que sean alteradas, enmendadas ó modificadas por la presente; ó hayan sido alteradas ó modificadas por· ordenes militares y decretos vigentes cuando esta ley entre á regir, y en todo aquello en que las mismas no resulten incompatibles ó en conflicto con las leyes estatutarias de los Estados Unidos no inaplicables localmente, ó con las presentes disposiciones, hasta que sean alteradas enmendadas ó revocadas por la autoridad legislativa creada por la presente para Puerto Rico, ó por una Ley del Congreso de los Estados Unidos.''

Ley Orgánica P. R., sec. 8. Estat. Rev. P. R. p. XVII.
En nuestra opinión, esta autoridad resuelve definitiva-

mente esta cuestión de la vigencia de la Constitución de los Estados Unidos en esta Isla, de acuerdo con nuestra resolución dictada y confirmada varias veces, bajo la autoridad de los casos insulares sobre las tarifas, que se encuentran publicadas en el Tomo 182, Estados Unidos, en las páginas 1 á 391, y bajo otras autoridades.

Este Tribunal, al resolver la solicitud de Habeas Corpus de Hobart S. Bird, discute la cuestión con alguna extensión, y para indicar nuestra opinión sobre este punto, solamente es necesario hacer referencia al caso mencionado.

Por las razones expresadas en la opinión del caso de Bird, la que tuve el honor de emitir, y por las demás razones aquí consignadas anteriormente, no puedo conceder efecto alguno al primer fundamento alegado por el abogado del prisionero. La quinta enmienda á la Constitución no está, ni ha estado núnca, vigente en Puerto Rico. No estimamos que las Cortes Insulares en Puerto Rico sean cortes federales á los efectos de la quinta enmienda á la Constitución, como no lo son las Cortes Territoriales ó las Cortes de Estado, en el Continente. Tales Cortes no fueron originalmente establecidas por el Congreso, sino que existían aquí con anterioridad al cambio de soberanía y cuando éste tuvo lugar, y fueron reorganizadas por la Ley Orgánica, en la forma en que existían en la epoca de la ocupación americana, y durante los cuatro últimos años de Gobierno civil ha habido amplia oportunidad y tiempo para que el Congreso, ó la Legislatura Insular, establecieran el sistema de Gran Jurado en esta Isla, si es que la Constitución de los Estados Unidos exigía el establecimiento de esa institución, ó el Pueblo de Puerto Rico la deseaba.

*Segundo.* El segundo error alegado por el abogado del prisionero consiste en una supuesta violación del artículo 461 del Código de Enjuiciamiento Criminal, y sostiene que un error de procedimiento cometido por el Tribunal sentenciador siempre justifica la revocación de la sentencia en un pro-

cedimiento de habeas corpus, y especialmente es esto así cuando se han perjudicado por ese error los derechos sustanciales del acusado. El artículo 461 del Código de Enjuiciamiento Criminal dice así:

"Ni el hecho de separarse de la forma prescrita por este Código para cualquiera alegación ó procedimiento, ni el de que éste adolezca de algún error ó equivocación, bastará para invalidarlo, á menos que real y efectivamente haya perjudicado al acusado y tienda á perjudicarle, en cuanto á algún derecho sustancial."

Estatutos Revisados, P. R., p. 730.

. Se verá que el abogado del prisionero expone esta proposición en el sentido inverso, en lugar de emplear la forma directa en que la expresa el Código. Hace referencia á tres casos de California, que no se han citado correctamente, y que encontrados y examinados, se ve que no tienen relación alguna con el caso. El principio enunciado en el Código, aún expuesto en la forma en que lo ha hecho el abogado del prisionero, es correcto, pero no tiene aplicación alguna en procedimientos de *habeas corpus.* Si se hubiera presentado, como probablemente se hizo, en la apelación, se le hubiera dado debida consideración, y si hubiera resultado correcto y justificado por los autos del juicio de la causa, celebrado ante la Corte de Distrito, hubiera motivado la revocación de la sentencia; pero en *habeas corpus* ningún error de procedimiento puede tener el efecto de excarcelar al prisionero, á no ser que verse sobre la competencia del Tribunal y anule, así, por completo, la sentencia dictada.

Harding ex parte 120 U. S. 782.
Yarbrough ex parte 110 U. S. 651.
Coy ex parte 127 U. S. 731.

*Tercero* En el tercer fundamento expresado en su alegato por el abogado del prisionero, en favor de éste, se afirma que un Tribunal de un Territorio, distinto de una Corte de un Estado, es una Corte de los Estados Unidos, y por consi-

guiente, que una Corte Territorial está comprendida dentro
de la quinta enmienda, como también dentro de la séptima
enmienda, á la Constitución de los Estados Unidos. En
apoyo de esta proposición no se hace referencia á autori-
dad alguna, y se cree que no puede encontrarse ninguna
que la sostenga. Por el contrario, en las anotaciones de
Gould & Tucker á la sección 1910 de los Estatutos Revisados
de los Estados Unidos, encuentro los casos siguientes, que
sostienen que un Tribunal Territorial no es una Corte de los
Estados Unidos, á los efectos de la Sección 1 del artículo
3 de la Constitución y probablemente dentro del significado
de la séptima y quinta enmiendas:

Véanse las Anotaciones de Gould & Tucker á la Sección
1910 de los Estados Revisados, p. 471 de los mismos; en las
que se encontrarán citados los casos de Howard v United
States, 22 Reports de la Corte de Reclamaciones, 305;
United States v. Beebe, 2 Dakota 292; United States v. Bi-
sel, 19 Reports del Pacifico 251; y Murphy v. Murphy, 25
North Western Reporter 806. Sobre este punto puede ha-
cerse también referencia á la opinión de esta Corte en el caso
de Bird, de la cual se toma el siguiente extracto:

"Pero aparte de este aspecto de la causa, el artículo 5º. de las
Enmiendas de la Constitución de los Estados Unidos no tiene apli-
cación á los Tribunales Insulares, y acusaciones por un Gran Jurado
para la declaración de culpabilidad del acusado en dichos Tribunales,
no son más necesarias de lo que lo serían en los Tribunales de Estado,
ó de los Territorios en los Estados Unidos. Este es un punto bien
establecido por numerosos casos, según queda demostrado en los dis-
cursos del Juez Miller sobre la Constitución de los Estados Unidos,
discurso 10, p. 493, donde dicho distinguido jurista, al hablar de la
enmienda 7ª., dice:

"Este artículo de las Enmiendas de la Constitución, así como to-
dos los demás desde uno á ocho inclusive, se refiere al ejercicio del
Gobierno de los Estados Unidos y no al de los Estados. Esto ha sido
decidido repetidas veces." Citando Livingston contra Moore, 7 Pet.
469; The Justices v. Murray, 9 Wall. 274. Edwards v. Elliott 21
Wall. 532.

Ni podrá aplicarse esta disposición en manera alguna á los Tribunales insulares en Puerto Rico, hasta que sean convertidos en cortes federales por una ley del Congreso.

Reynolds v. United States 98 U. S. 145.
Eilenbecker v. District Court, 134 U. S. 31.
United States v. Cruikshank 92 U. S. 542.
Walker v. Savinet 92 U. S. 90.
Fox v. Ohio 46 U. S. 510.
Holmes v. Jennings 39 U. S. 549.
Presser v. Illinois 116 U. S. 252.
Ross v. McIntyre 140 U. S. 453.
Cook v. United States 138 U. S. 157.
Hurtado v. California 110 U. S. 516.
McAllister v. United States 141 U. S. 174.
Permoli v. N. O. 44 U. S. 589.

No hemos podido encontrar ninguna resolución de la Corte Suprema que de un modo directo prescriba la condición de las cortes territoriales con arreglo á la Enmienda 7ª de la Constitución de los Estados Unidos; pero en el caso de Walker vs. S. P. R. R. Co. resuelto en 1896, el abogado presentó esta cuestión y el Juez Señor Brewer, al redactar la Opinión del Tribunal, dice:

" 'Juzgamos innecesario considerar la alegación que hace el demandado de que las cortes territoriales no son cortes de los Estados Unidos, y que la Enmienda 7ª. no es de aplicarse á los Territorios porque el Congreso por una Ley de Abril 7 de 1874, c. 80, 18 Stat. 27, al legislar para todos los territorios declaró "que á ninguna parte se le privará del derecho de tener un juicio por jurados en los casos que hayan de resolverse con arreglo á la ley común; y aunque esto no haga extensivas á los territorios, de modo terminante, todas las prescripciones de la Enmienda 7ª. asegura todos los derechos de un juicio por jurado, tal y como ellos existían en la ley común." Walker vs. S. P. R. R. Co., 165 U. S. pp. 595 y 596.

Se hizo referencia á esta causa, aprobándola, en la causa posterior de "American Publishing Co. vs. Fisher, 166 U. S. 467.

Si la Enmienda 7ª. tuviera aplicación á dichas cortes, es bastante probable que la resolución se hubiera basado en la Constitución más bien que en el Estatuto; y podemos deducir lógicamente que la Corte Suprema no considera que las cortes territoriales sean cortes federales dentro de los límites de la Emmienda 7ª.

Pero las Cortes insulares de Puerto Rico, de jurisdicción original, tienen más analogía con las cortes de los Estados que con las de los territorios. No fueron creadas por una ley del Congreso sino que existían antes de la aprobación de la Ley Foraker que las reconoció y las dejó en vigor. Véase la sección 35 de la Ley Orgánica. Puerto Rico no es un territorio, ni es un Estado de la Unión Americana, pero sus cortes de primera instancia tienen muchas, si no todas, de las atribuciones de dichas cortes; y al firmarse el Tratado de París, y durante todo el período de Gobierno Militar, había en la isla un completo sistema judicial que hasta la fecha presente se ha modificado solamente, sin que se haya cambiado del todo durante el Gobierno Civil.

Por estas razones, si la Constitución de los Estados Unidos estuviera vigente en Puerto Rico, no podría considerarse que la Enmienda 7ª. tuviera aplicación á sus cortes, pues ellas estarían comprendidas en las decisiones mencionadas anteriormente, las que sostienen que esta Enmienda no tiene aplicación á las cortes de los Estados.

Una institución como el Gran Jurado no ha sido nunca vista en las cortes insulares de Puerto Rico. Existen á la sazón unos mil prisioneros en la Penitenciaría de Puerto Rico, á los cuales habría que soltar si se diese esta interpretación al Código Penal; sin embargo, si fuera necesario para hacer justicia en el presente caso, este Tribunal no vacilaría en abrir las puertas de todas las cárceles de la isla. Pero esa interpretación no está autorizada por autoridad alguna de las que se han presentado ante esta Corte, ó pudiera encontrarse después de una diligente busca.''

Por las razones expresadas en esta opinión, así como por otras razones que en la misma no se expresan, se resuelve confiadamente que las Cortes Insulares de Puerto Rico no pueden merecer la consideración de Cortes Federales á los efectos de la Constitución de los Estados Unidos, y, como consecuencia, que la institución del Gran Jurado y del pequeño jurado, á que se refieren la 5ª. y 6ª. Enmiendas á la Constitución de los Estados Unidos, no tiene apliación á dichas Cortes.

*Cuarto.*—El cuarto fundamento expresado en el alegato del abogado del prisionero que pretende se le excarcele, consiste en que la Enmienda 14ª. á la Constitución de los Esta-

dos Unidos es aplicable á Puerto Rico, y que ni Puerto Rico, ni ningún otro Estado, tiene derecho alguno para privar á cualquier persona de la vida, libertad ó propiedad, sin que se siga para ello el debido procedimiento legal, ni para negar á cualquier persona, que se encuentre dentro de su jurisdicción, igual protección legal. No se hace referencia á ninguna otra autoridad que no sea la misma Enmienda 14ª. Aun concediendo, para los fines de la discusión solamente, que los principios enunciados en este artículo de la Constitución Americana están en completo vigor y efecto en la isla de Puerto Rico, verémos que el prisionero no tiene motivo alguno de queja á causa de cualquiera supuesta violación de los derechos que dicho artículo le otorgue. El abogado deja de expresar en qué concepto fué el acusado privado de su libertad, ó de su vida, sin que se haya seguido para ello el debido procedimiento legal, á no ser que sea en el hecho de habérsele denegado el privilegio de ser procesado por el Gran Jurado. Esa cuestión ha sido discutida en la presente, y resuelta definitivamente, á satisfacción nuestra, bajo el primer punto consignado en el alegato del ilustrado abogado del prisionero.

En un caso considerado cuidadosamente, en la discusión del cual se encontraba envuelta la Enmienda 14°, el *Chief Justice* Sr. *F*uller, hace las siguientes observaciones:

"El abogado sostiene que el derecho reclamado bajo la Constitución de los Estados Unidos era el derecho á que se siguiera el debido procedimiento legal, y derecho á una protección igual ante la ley.

El derecho á una igual protección legal no fué ciertamente denegado, porque es evidente que la misma ley ó sistema de enjuiciar que se aplicó á Tinsley, se hubiera aplicado á cualquiera otra persona del Estado de Texas bajo circunstancias y condiciones análogas; y no hay nada en los autos que justifique una deducción en sentido contrario.

Fué denegado el derecho á que se siguiera el debido procedimiento legal? Si el Tribunal que decretó la prisión tenía jurisdicción de la materia, y de la persona, y tenía facultades para dictar la resolución que fué desobedecida y por virtud de la cual se dictó la

sentencia de desacato, y si tenía facultades para dictar tal sentencia, entonces la Corte de Apelaciones en lo criminal no podía hacer otra cosa que casar el auto de habeas corpus y encarcelar nuevamente al peticionario. No puede hacerse uso de este auto á los efectos de una apelación ó de un recurso por causa de error, y si el mandamiento de prisión no era nulo, el peticionario no fué privado de su libertad sin el debido procedimiento legal.''

Tinsley v Anderson, 171 U. S. 106.

Estas expresiones son completamente aplicables al caso que estamos ahora considerando. Las mismas leyes que han sido aplicadas á Diaz, se aplicaron anteriormente á todas las otras personas. La declaración de su culpabilidad ha sido el resultado de un juicio regular, celebrado con arreglo á las leyes vigente en esta isla, y si él puede ser excarcelado por razón de esta alegación, así pueden serlo centenares de personas que se encuentran ahora confinadas en la Penitenciaría Insular. Siendo este el caso que los autos presentan, semejante al del Tribunal de Apelaciones de Texas, por lo que respecta á este fundamento, ''no podemos hacer otra cosa que casar el auto de habeas corpus y encarcelar nuevamente al peticionario.''

Pero la Enmienda decima cuarta no ha sido nunca hecha extensiva á Puerto Rico, según hemos demostrado al discutir la primera proposición alegada por el ilustrado abogado del prisionero. El caso de Mankichi vs. Hawaii, ya citado en la presente, tiene aplicación tanto á la Enmienda decima cuarta como á la quinta y sexta, toda vez que el principio es el mismo. Y en un caso posterior, resuelto en el Tribunal Supremo de los Estados Unidos después que este caso fué argumentado y sometido á resolución, se ha establecido la doctrina de que el Congreso no está obligado á establecer para los Territorios cedidos, tales como Puerto Rico, un sistema de leyes que pongan en vigor todas las garantías consignadas en las Enmiendas á la Constitución americana.

Véase el caso de Dorr & O'Brien vs. The Philippines, que todavía no se ha publicado oficialmente.

*Quinto.*—En la quinta proposición en que basa su argumento el abogado del prisionero, alega también que ha sido privado de un juicio rápido é imparcial, que le asegura la Constitución de los Estados Unidos, y cita la obra de Cooley sobre Limitaciones Constitucionales, páginas 439 y siguientes; cita, además, los casos de Bigerow ex parte, 133 Cal 349; Wats vs. The State, 36 Georgia 231; United States v. Sacramento, 2 Mont. 239, y el caso de In re Garvey, 7 Colo. 502. De estos casos, aquéllos que están á manos han sido examinados por el Tribunal y la mayor parte de ellos han resultado ser inaplicables á las cuestiones sometidas y discutidas en el presente caso.

El caso de Bigerow, ex parte, 133 Cal. 349, citado por el abogado del prisionero como un caso de aplicación al presente, á primera vista parece ser algo semejante; pero cuando se le examina cuidadosamente se vé que el estatuto de California, aunque idéntico al nuestro, se basa en un precepto constitucional que prescribe un juicio rápido y el Tribunal interpreta el estatuto en el sentido de contener una declaración de lo que constituye un tiempo racional dentro del cual deba celebrarse un juicio.

Además, el caso de Bigerow fué resuelto por una mayoría del Tribunal, y la Opinión disidente, emitida por el Juez Garoutte, me parece mucho más lógica. Los hechos de ese caso son también mucho más favorables al prisionero que los del caso de autos. No solamente dejó de mostrarse era necesaria, sino que no se mostró ningun hecho que tendiera á excusarla. No hay ningún precepto constitucional en Puerto Rico, como el que existe en California, y por esa razón se concede á los tribunales una facultad más amplia en la interpretación de este estatuto y una causa de menor importancia es suficiente para constituir una buena razón para posponer un juicio. El estatuto es el que asegura el derecho á

obtener un juicio rápido en Puerto Rico, y podría muy bien discutirse si tal estatuto es de carácter mandatorio ó simplemente indicativo. Aun cuando ninguna razón apareciera en los autos que justificara una breve dilación por parte del Tribunal en someter el acusado á juicio, se presumiría, á falta de prueba en contrario, que el tribunal sentenciador tenía motivos suficientes que justificaran una dilación como la ocurrida en el juicio de este caso. Toads las presunciones están en favor de la corrección de los procedimientos seguidos por un tribunal de competente jurisdicción. Del mismo record de este caso aparece que había otros dos casos de asesinato en el *docket* ó libro registro de causas, los cuales fueron juzgados durante el tiempo en que este caso estuvo esperando su turno. No aparece qué tiempo fuera necesario para despachar tales casos.

Indudablemente, si se examina el record presentado á este Tribunal, por virtud de la apelación interpuesta en este caso, se verá que el acusado ha tenido realmente un juicio rápido é imparcial, y que la simple suspensión del caso de día en día, exigida por los asuntos del tribunal y para obtener la asistencia de los testigos, no constituía una dilación tal que pudiera hacerse de ella un buen motivo de queja. El delito del cual fué declarado culpable el acusado, se alegó haberse cometido el día 26 de Agosto de 1902; la acusación contra él no fué presentada hasta el 25 de Noviembre de 1902; sin dilación se le leyó la acusación el mismo día, y después de varias providencias interlocutorias, dictadas de tiempo en tiempo, fué juzgado, finalmente, el día 18 de Mayo de 1903, y sentenciado el día 25 de Mayo de 1903, un día antes de cumplirse nueve meses después de la comisión del delito, y seis meses después de haberse presentado la acusación. Indudablemente que este es un tiempo racionalmente corto para un tribunal que tiene varios casos de asesinato pendientes, y en un caso de pena capital en que hay que citar y examinar muchos testigos, y en el que, por las circunstancias que le rodeaban, era muy difícil encontrar prueba de cargo y presen-

tarla al tribunal sentenciador; y habría más razón para que el acusado se quejara de la rapidez, que de la dilación, con que fué resuelto su caso.

Pero esta cuestón se ha presentado aquí en un procedimiento de habeas corpus, despúes que la misma cuestión había sido debidamente considerada en apelación y resuelta en contra del prisionero. Pero examinémos brevemente el punto. El Estatuto (el Código de Enjuiciamiento Criminal, artículo 448) dice así:

"Art. 448.—A menos que exista justa causa contraria, el Tribunal decretará el sobreseimiento del proceso en los casos siguientes:

1. Cuando una persona haya sido detenida para responder por la comisión de un delito público, siempre que no se haya presentado acusación contra ella en el término de 60 días desde su detención.

2. Cuando un acusado, cuyo juicio no haya sido transferido á petición suya, no sea sometido á juicio en el término de 120 días á contar desde la presentación de la acusación. Código de Enjuiciamiento Criminal, artículo 448.

Se presume que el tribunal sentenciador ha de dictar esta resolución mediante moción ó á solicitud del acusado. Su objeto es determinar si existe una buena causa para que suceda lo contrario. Si el tribunal deniega ó concede la moción, debe dictarse una orden á ese efecto; y si no es satisfactoria, el acusado puede excepcionar la resolución y someter la cuestión para su revisión en la apelación.

Para poder utilizar el derecho concedido en este estatuto, en una apelación, es necesario consignar el punto en un pliego de excepciones, que comprenda todas las circunstancias del caso, y que presente la cuestión correcta y completamente á la decision del Tribunal Supremo. Esto no se hizo y el Tribunal correctamente resolvió que en los procedimientos del Tribunal inferior no aparecía error alguno susceptible de revocación. Y aun en caso de que el Tribunal Supremo hubiera incurrido en error en este punto, la cuestión no podría ser sometida á discusión en habeas corpus, toda vez que el error no es fundamental, sino simplemente de procedimiento.

La Constitución de los Estados Unidos no tiene aplicación
á esta cuestión, por las razones que se han expresado en otros
párrafos de esta Opinión.  La cuestión en su integridad fué
discutida ante este Tribunal, en los alegatos y en los infor-
mes de la apelación interpuesta contra la sentencia pronun-
ciada en contra del prisionero, y tal cuestión fué resuelta en
sentido contrario á sus pretensiones, por las razones que
consignó el Juez Asociado Sr. Hernández, que emitió la
Opinión del Tribunal.

*Sexto.*—La sexta proposición enunciada por el abogado
del prisionero es un sumario de las otras cinco, alegando que
la sentencia dictada por el Tribunal Supremo es irregular y
nula, por las razones que expresa, y que esa irregularidad y
nulidad consisten en haber confirmado la sentencia dictada
por la Corte de Distrito de Humacao, con perjuicio de los de-
rechos sustanciales del prisionero.

Es esto un esfuerzo evidente tendente á revisar todo el
caso en este procedimiento y á hacer uso del auto de habeas
corpus para los fines de una apelación ó un recurso por causa
de error, lo que no puede hacerse, según ha resuelto este
Tribunal repetidas veces.  Un estudio cuidadoso de los es-
tatutos en relación con las resoluciones del Tribunal Supremo
de los Estados Unidos, y de California, de donde ha sido to-
mado nuestro Código de Enjuiciamiento Criminal, facilitaría
á los abogados el medio de evitar tales procedimientos erró-
neos.  La discusión ordenada de los diferentes puntos alega-
dos, abarca completamente todo el caso presentado en el ale-
gato del abogado, y es innecesario volver otra vez sobre los
mismos puntos.

Aunque podría propiamente presumirse que no habiendo
incluido el abogado del prisionero algunos de los fundamen-
tos expresados en su solicitud de habeas corpus, en el alegato
presentado en este caso, los ha abandonado por no tener apli-
cación á este procedimiento, los estudiarémos y revisarémos
brevemente, especialmente por ser este un caso de pena capi-

tal y todo lo que pueda alegarse en favor del desgraciado que
ha sido condenado á muerte, debe ser oido con paciencia y
considerado cuidadosamente.   Todos estos puntos están su-
jetos á la objeción formulada por el Fiscal al efecto de que
no constituyen materia propia de un procedimiento de habeas
corpus, sino solamente de una apelación; y aun en el caso de
que estuvieran  bien  fundamentados,  han  debido alegarse
cuando este caso fué sometido á consideración con el fin de
corregir los errores del Tribunal sentenciador, y no ahora
cuando solamente podemos investigar la legalidad de la
prisión.

 Refiriéndonos, sin embargo, á la solicitud, tomarémos los
puntos más importantes, presentados en la misma, y que por
haber sido omitidos en el alegato no han sido, hasta ahora,
discutidos.

Se alega en el segundo párrafo de la solicitud que el Fiscal
no había entregado al acusado una lista de sus testigos
cuando se la pidió, en cumplimiento del artículo 142 del Có-
digo de Enjuiciamiento Criminal.  Este artículo del Código
dice así:

"El Fiscal deberá formular la acusación la cual consiste en la
lectura de la misma y entrega de una copia de ella al acusado con las
correspondientes notas al dorso, inclusa la lista de testigos, despues de
lo cual el tribunal preguntará al acusado si se confiesa culpable ó nie-
ga la acusación."

Código de Enj. Crim., Art. 142. Estat. Rev. P. R. p. 706.

Un artículo subsiguiente del mismo Código prescribe que
se conceda al acusado, si así lo exige, por lo menos un día,
después de habérsele leido la acusación, para que la conteste,
ya pidiendo que se anule, ó ya excepcionándola ó haciendo
alegaciones en contestación á la misma.   El acusado se de-
claró no culpable, sin insistir en que se le diera la lista de tes-
tigos, renunciando, así, su derecho á la misma.

En el párrafo 4to. de la solicitud se hace la alegación de

que el acusado fué juzgado por el Jurado que fué elegido por
la comisión de jurados en Abril de 1903, en lugar del jurado
que fué seleccionado con anterioridad para actuar durante el
año 1902.   Las funciones del Jurado antiguo cesan tan pron-
to como el nuevo Jurado es elegido, y como el juicio no se ce-
lebró hasta el día 18 de Mayo, tal juicio fué debidamente ce-
lebrado ante el Jurado seleccionado durante el mes anterior.
Una simple lectura corrida de los artículos 191 á 196 del Có-
digo de Enjuiciamiento Criminal no deja lugar á dudas sobre
este punto.   Est. Rev. P. R. pp. 717 y 718.

En el párrafo 6to. de su solicitud el abogado del prisionero
se queja de que no se le permitió presentar como prueba, con
el fin de impugnar la veracidad de los testigos de cargo, una
copia de los autos del caso de Luis Delgado, en el que se su-
ponia que existian afirmaciones contrarias á las que hicieran
los testigos en este juicio.   Este punto fué considerado com-
pletamente por este Tribunal, en la apelación, y se discute
extensamente en la opinión emitida en la apelación por el
Juez Asociado Sr. Hernández.   Refiriéndonos á esa Opinión
solamente necesitamos decir aquí que no se justificó debida-
mente la razón para presentar la prueba tendente á impug-
nar le veracidad de los testigos y fué debidamente excluida.

Véase el artículo 245 del Código de Enjuiciamiento Crimi-
nal, Estatutos Revisados, página 731.

Es innecesario tomar en consideración el punto en que
el abogado afirma que se le negó al acusado la celebración de
un nuevo juicio.   Es muy raro que tal razón se dé para solici-
tar un auto de *habeas corpus.*

Ninguno de los otros puntos exige una consideración más
amplia que la que ya se les ha dado; excepto para decir que
toda la solicitud trata evidentemente de someter á revisión,
por este Tribunal, en este procedimiento, todo el caso presen-
tado en la corte inferior y considerado ya por este Tribunal;
tratando así de utilizar el habeas corpus á los efectos de un
recurso por causa de error ó de una segunda apelación.

En muchos casos anteriores hemos tratado de dirigir la atención del foro hacia la naturaleza y objeto del gran auto de *habeas corpus,* tan elogiado por todos los amantes de la libertad individual del mundo entero.  Lo menos por espacio de seiscientos ochenta y nueve años (desde el otorgamiento de la Carta Magna, en doce de Junio de 1215) ha sido materia de discusión y resolución en los Parlamentos, las Legislaturas, y los Tribunales de Inglaterra y América.  Hace más de doscientos veinte y cinco años (en 26 de Mayo de 1679) que la famosa ley de *habeas corpus,* Ley 31 del Reinado de Carlos Segundo, fué aprobada para asegurar los beneficios completos del auto contra un monarca déspota y contra sus serviles jueces.  Durante todos estos años y centurias se han suscitado constantemente casos en que la naturaleza, extensión y fines de este auto han sido investigados y resueltos y para esta época deberian ser bien comprendidos. Pero como este recurso contra la prisión ilegal era desconocido en esta isla hasta el advenimiento de las instituciones Americanas, á penas puede esperarse que el foro y el pueblo se familiaricen con estos principios de jurisprudencia hasta que nuestros propios tribunales los hayan enunciado repetidas veces en sus salas de justicia.

En los países más libres de la Tierra no existe la libertad absoluta.  Se encuentra solamente en los Estados sometidos á un completo barbarismo; y aún en ellos está limitada por la voluntad del jefe que pueda ejercer el mayor poder.  En las sociedades organizadas la libertad de cada individuo está limitada por los derechos de sus conciudadanos.

El Juez Cooley, en su gran obra sobre Limitaciones Consstitucionales, habla de libertad en la forma siguiente:

"El Sr. William Blackstone dice que la libertad personal consiste. en la facultad de moverse, de cambiar de sitio, de trasladarse una persona á cualquier lugar á que su propia inclinación le dirija, sin detención ó limitación alguna, á no ser que fuere decretada mediante el debidio procedimiento legal. Aparece, pues, que esta facultad de

moverse ó trasladarse de un punto á otro no es ilimitada completa-
mente, sino que, mediante el debido procedimiento legal, ciertas con-
diciones y limitaciones pueden imponerse á la misma, sin que por
ello se infrinja la libertad constitucional. Verdaderamente, en una
sociedad organizada, la libertad es hija de la ley y todo hombre la
posee en proporción, toda vez que las leyes, aunque no impongan res-
tricciones innecesarias, le rodean, así como á los demás ciudadanos,
y le protegen contra actos ilegales de los demás.'' Limitaciones Cons-
titucionales de Cooley, página 412, y casos citados en la misma.

El único objeto del auto de *habeas corpus* es liberar al soli-
citante de una prisión ilegal y es un recurso que tiene por ob-
jeto alcanzar con sus efectos toda prisión ilegal y abrir las
puertas de la prisión á todo inocente que se encuentre confi-
nado en la.misma.

> Wales v. Whitney 114 U. S. 564.
> Coupland ex parte 26 Texas. 386.
> Commonwealth v. Lecky 1 Watts 66; 26 Am. Dec. 37 y nota.

No puede, sin embargo, usarse para sustituir la apelación,
ó para juzgar nuevamente cuestiones de hecho, ó para revisar
los procedimientos de una corte seguidos en un juicio cele-
brado legalmente.   No desempeña las funciones de un recurso
por causa de error ó de un certiorari.   Está limitado á su
propia esfera.

> Lehmkuhl ex parte 72 California 53.
> Williamson ex parte 26 Penn. St. 9; 67 Am. Dec. 374 y nota.
> McCutcheon ex parte 10 Mont. 115;
> Yarbrough ex parte 11 U. S. 651.

Los errores é irregularidades de procedimiento que no en-
vuelvan una cuestión de jurisdicción del Tribunal que dictó
la sentencia bajo la cual el prisionero está en custodia, no pue-
den ser revisados ó corregidos en *habeas corpus*.

> Grace ex parte, 12 Iowa 208; 79 Am. Dec. 536 y nota.
> Orteiza ex parte 136 U. S. 330;

Stevens v. Fuller, 136 U. S. 468;
Mirando ex parte 73 Cal. 365;
Crouch ex parte 112 U. S. 178.
Watkins ex parte 3 Peters 193.
Harding ex parte 120 U. S. 782.

El Juez Cooley, al definir el objeto de las funciones que ha de desempeñar el gran auto de *habeas corpus,* observa sabiamente:

"En otro lugar nos hemos referido á ciertas reglas referentes á la validez de los procedimientos judiciales. En la gran ansiedad habida por parte de nuestros legisladores para dictar las disposiciones más amplias para el pronto remedio de una prisión ilegal, se ha conferido la facultad de expedir el auto de habeas corpus á funcionarios judiciales de categoría inferior, que hacen uso de él, algunas veces como si fuera un recurso por causa de error, en el cual pudieran corregir los errores é irregularidades de otros jueces y tribunales, cualquiera que fuere su relativa jurisdicción y categoría Tal uso del auto es un abuso. Cuando una persona que esté en prisión bajo un mandamiento judicial, es traida á la presencia por virtud de un habeas corpus, el tribunal ó juez ante el cual comparezca ha de investigar: 1. Si el tribunal ó funcionario que expidió el mandamiento por virtud del cual es detenido tenía jurisdicción del caso y si ha actuado dentro de esa jurisdicción al expedir tal mandamiento. Si fuere así, meras irregularidades ó errores de la sentencia, cometidos en el ejercicio de esa jurisdicción, no deben ser considerados en este auto, y deben ser corregidos ya por el tribunal que expidió el mandamiento, ó en procedimiento regular de apelación. 2. Si el mandamiento no es nulo por falta de jurisdicción, la investigación siguiente ha de tender á determinar si, con arreglo á derecho, el caso es susceptible de fianza, y si fuere así, se aceptará la fianza si el intersado la ofrece; en caso contrario será devuelto al funcionario á quien corresponda su custodia. Limitaciones Constitucionales de Cooley págs. 423, 424 y 425 y casos citados en la misma.

Constituye ésto una exposición concisa de lo que con frecuencia ha sido enunciado por los Tribunales de todas las partes de nuestra gran República y una referencia á las resoluciones judiciales mismas, justifica ampliamente esa exposición.

De acuerdo con esos principios, el Tribunal Supremo de los Estados Unidos dice:

"Ahora bien, se ha sostenido siempre que un simple error de derecho cometido por un tribunal en un caso sometido propiamente á su conocimiento, solamente puede ser revisado por los métodos del procedimiento ordinario de una apelación ó de un recurso por causa de error; pero que, cuando los procedimientos no son solamente erróneos, sino completamente nulos—como cuando una corte carece de jurisdicción sobre la persona ó sobre la causa y en su consecuencia se sujeta á una persona á prisión ilegal—el Tribunal Superior ó el juez investido de la facultad privilegiada de expedir un *habeas corpus,* debe revisar los procedimientos á virtud de ese auto y lavantar la prisión ilegal. Es éste uno de los modos en que este tribunal ejerce sus facultades fiscalizadoras sobre las cortes y tribunales inferiores; pero es un modo especial, y circunscrito á una limitada clase de casos.

Parks ex parte 93 U. S. 21.

En un caso muy celebrado, el Tribunal judicial más alto expresa muy claramente las funciones y limitaciones del gran auto de *habeas corpus,* en la forma siguiente:

"Hay otras limitaciones de la jurisdicción, sin embargo, que surgen de la naturaleza y fines del auto mismo, que las define el derecho común, y de las cuales se han derivado su nombre y los incidentes á que ha dado lugar. No puede usarse como un simple recurso por causa de error. Meros errores en la sentencia ó en los procedimientos bajo la cual y por virtud de los cuales una parte ha sido encarcelada, no constituyen fundamento alguno para la expedición del auto. De donde se deduce que si al devolverse-diligenciado un auto de habeas corpus se vé que el prisionero está detenido por virtud de haber sido declarado culpable y sentenciado por un tribunal con jurisdicción sobre la causa, es regla general que será inmediatamente devuelto á la prisión. No se hará investigación alguna con respecto á la regularidad de los procedimientos, á no ser, sin embargo, cuando el tribunal tenga competencia por un recurso por causa de error ó de apelación para revisar la sentencia. En tal caso, si el error se halla manifiesto en autos y es ilegal la prisión, el tribunal de apelación podría, quizás, á su discreción, poner inmediato remedio por virtud de un habeas corpus, evitando así á la parte la dilación y los gastos de un

recurso por causa de error.    (Bac. Abr., Hab. Corp., B. 13; Bethell's
Case, Salk. 348; 5 Mod. 19.    Pero es regla general que una declara-
ción de culpabilidad y una sentencia dictada por tribunal de compe-
tente jurisdicción es una causa legal de prisión, y no puede darse re-
medio alguno por habeas corpus.''

''Por el único fundamento en que este Tribunal, ó cualquier otro,
á falta de un estatuto especial que lo autorice, auxiliará por virtud
de un habeas corpus á un prisionero declarado culpable y sentenciado
por otro tribunal, es por la falta de jurisdicción de tal tribunal so-
bre la persona ó la causa ó alguna otra materia que haga nulo su pro-
cedimiento.''    • •

Esta distinción entre una sentencia errónea y otra que sea ile-
gal ó nula está bien establecida en los dos casos de *Ex parte Lange*,
(18 Wall. 163) y Ex parte Parks. (93 U. S. 18).    En el primer caso
resolvimos que la sentencia era nula y excarcelamos por consiguiente
al prisionero; en el último resolvimos que la sentencia, fuera ó nó
erronea, no era nula, porque el tribunal tenía jurisdicción de la cau-
sa; y nos negamos á intervenir.''

El Chief Justice Abbot en el caso de *Rex v. Suddis* (1 East 306)
dijo: ''Es regla general que cuando una persona ha sido reducida á
prisión por virtud de sentencia dictada por otro tribunal de compe-
tente jurisdicción en lo criminal, este tribunal (el tribunal del Rey),
no puede revisar la sentencia en el diligenciamiento de un habeas
corpus.    En tales casos este tribunal no es un tribunal de apelación.''

Se afirma, sin embargo, en las Recopilaciones de Bacon, probable-
mente con las palabras del Jefe Baron Gilbert, que ''si el manda-
miento de prisión es contrario á ley, por estar dictado por uno que
no tenía jurisdisción de la causa, ó por un hecho por el cual, con
arreglo á derecho, ningún hombre debía ser castigado, el tribunal de-
be excarcelar.    Bac. Abr. Hab. Corp., B. 10.    La última parte de
esta regla, cuando tiene aplicación á una prisión por virtud de una
declaración de culpabilidad y de una sentencia, está limitada á
aquellos casos en que clara y manifiestamente hay falta de criminali-
dad en el hecho imputado, de tal modo que haga en efecto nulos
los procedimientos.    La autoridad que generalmente se cita bajo este
encabezamiento es el caso de Bushel, resuelto en 1670.    En ese caso,
doce jurados fueron declarados culpables en el Tribunal de lo Cri-
minal por haber dictado un veredicto (en contra de las instrucciones
de la corte) absolviendo á William Penn y otros, que fueron acusa-
dos de reunirse en junta ó sociedad con fines ilícitos.    Habiendo sido
encarcelados por negarse á pagar las multas que les fueron impues-

tas, solicitaron del tribunal de derecho común un *habeas corpus;* y aunque el tribunal, por no tener jurisdicción en asuntos criminales, vacilara al expedir el auto, sin embargo, habiendo expedido, excarceló á los prisioneros bajo el fundamento de que su convicción era nula, toda vez que los jurados no pueden ser procesados por dictar el veredicto que tengan por conveniente. La opinión que el Chief Justice Vaughan emitiera en el caso, con raras excepciones ha sido superada por lo que respecta á su elocuencia jurídica. T. Jones 13; s. c. Vaughan, 135; s. c. 6 Howell's State Trials, 999.

Sin tratar de resolver hasta qué punto puede este caso tener la consideración de ley que sirva de guía á este tribunal, opinamos claramente que la cuestión planteada en los casos sometidos á nuestra consideración, es cuestión que propiamente puede discutirse en habeas corpus. La validez de las sentencias que en ellos se dictaran se ataca bajo el fundamento de que las leyes del Congreso, por virtud de las cuales se formularon las acusaciones, son anti-constitucionales. Si esta objeción está bien presentada, ella afecta los cimientos de los procedimientos en su integridad. Una ley anti-constitucional es nula y es como si no existiera. Un delito definido ó establecido en la misma no es tal delito. Una declaración de culpabilidad hecha de acuerdo con la misma, no es simplemente errónea, sino que es ilegal y nula, y no puede constituir causa legal de prisión. Es verdad que si no procede el recurso por causa de error, la sentencia puede tener el carácter de definitiva en el sentido de no haber medio alguno de obtener su revocación. Pero la libertad personal es de tan gran importancia ante los ojos de la ley que la sentencia de un tribunal inferior que la afecte no se considera de tal modo concluyente, sino que, como hemos visto, la cuestión de la autoridad que tuviera el tribunal para juzgar y encarcelar la parte puede ser revisada en habeas corpus, por un tribunal ó juez superior que tenga autoridad para expedir el auto. Estamos convencidos de que el caso presente es de aquéllos en que este Tribunal está autorizado para asumir tal jurisdicción. Opinamos así, porque, si las leyes son anti-constitucionales y nulas, el tribunal de Circuito no adquirió jurisdicción de las causas. Su autoridad para procesar y juzgar á los peticionarios surgió solamente con motivo de estas leyes. Ex parte Siebold 100 U. S. 375, 376 y 377

El Tribunal Supremo de los Estados Unidos, aprobando el caso de Siebold, y dando la razón que informa la regla, usa las siguientes expresiones:

"El objeto de un auto de habeas corpus y los casos en que general·

mente ha de concederse, fueron claramente expresados por el Juez Asociado Sr. Bradley, que emitió la Opinión del Tribunal en el caso de Ex parte Siebold, 100 U. S. 371 375, en la forma siguiente:

(Después de citar el extracto que acabamos de hacer, tomándola del Tomo 100 U. S. 376, en donde se muestra la diferencia que existe entre una sentencia errónea y una que sea nula, continúa:)

"La razón que informa esta regla descansa en el hecho de que un procedimiento de habeas corpus constituye un ataque colateral, de naturaleza civil, para impugnar la validez de una sentencia de otro tribunal dictada en un procedimiento criminal, y debe, por consiguiente, estar limitado á aquellos casos en que la sentencia impugnada sea claramente nula por razón de haberse dictado sin jurisdicción, ó por razón de haber excedido el tribunal su jurisdicción.

In re Frederich, peticionario, 149 U. S. 76.

Y finalmente, algunas de las autoridades de mayor aplicación, han sido citadas por el Tribunal Supremo en el siguiente párrafo:

"El auto de habeas corpus no es un procedimiento establecido para la corrección de errores. Ex parte Lange, 18 Wall 163; Ex parte Siebold 100 U. S. 371; Ex parte Curtis 106 U. S. 371; Ex parte Carll 106 U. S. 521; Ex parte Bigerow 113 U. S. 328; Ex parte Yarbrough 110 U. S. 651; Ex parte Wilson 114 U. S. 417; Ex parte Royal 117 U. S. 241; In re Snow 120 U. S. 274; In re Coy 127 U. S. 731; In re Wight, petitioner, 134 U. S. 136; Stevens v. Fuller, 136 U. S. 468."

In re Frederich peticionario 149 U. S. 75.

Teniendo presentes estos principios, los abogados, al preparar sus solicitudes de *habeas corpus,* deberían eliminar de las mismas toda materia extraña, y limitarse á aquellas materias que pueden propiamente recibir la atención del Tribunal. El estatuto de *habeas corpus,* que se encuentra en nuestro Código de Enjuiciamiento Criminal (arts. 469 á 500

inclusive) contiene los principios generales que son de aplicación en este procedimiento, y si se siguen, especialmente á la luz de los comentarios que sobre los mismos se hacen bajo los artículos semejantes, contenidos en el Código Penal de California (artículos 1473 á 1505 inclusives) conducirán al abogado por el camino recto.

La sentencia dictada por la Corte de Distrito de Humacao, condenando á muerte al prisionero, que fué confirmada por este Tribunal en apelación, era de aquéllas que podía claramente el tribunal inferior dictar dentro de sus facultades, toda vez que ese tribunal tenía jurisdicción de la persona del acusado y de la materia, como lo fué también la dictada por este Tribunal confirmando la misma en apelación; y cualesquiera que hayan sido los errores que puedan haberse cometido por cualquiera de dichos tribunales, si es que alguno se cometió, no eran fundamentales, y toda vez que, según las expresiones del Chief Justice Fuller, no puede hacerse uso del auto á los efectos de un recurso por causa de error ó de apelación'' el remedio solicitado no puede concederse.

No es necesario entrar en una discusión minuciosa con respecto á esta opinión, toda vez que las varias enmiendas á la Constitución, á que se refiere el abogado del prisionero, no tienen aplicación alguna al presente caso, y como no se ha señalado ninguna acción, ya del Tribunal Supremo ó de la corte inferior, que pudiera anular la sentencia dictada por dichos Tribunales, ó cualquiera de ellos; y como, si se hubiera cometido algún error, sería solamente de aquellos que pueden ser considerados en una apelación, y no en *habeas corpus;* por las razones expuestas debe, por lo tanto, denegarse la excarcelación del prisionero.