EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ MARÍA BERNABE, acusado y apelante.

Núm. 6011.—*Sometido:* Mayo 5, 1936. *Resuelto:* Diciembre 22, 1936.

*Martínez Nadal & Navarro Ortiz,* abogados del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

Bernabe fué convicto del delito de homicidio voluntario a virtud de acusación por el de asesinato.

■ Uno de los miembros del jurado tenía criterio formado por lo que había leído en los periódicos. Luego de ser examinado por la defensa y repreguntado por el fiscal, el juez de distrito interrogó a este miembro del jurado y se negó a sostener una recusación motivada. Este jurado fué entonces recusado perentoriamente. El primer señalamiento se dirige a la negativa de la corte a sostener una recusación motivada.

En ausencia de una discusión seria por parte del apelante de la cuestión que aquí se trata de plantear, tan sólo necesitamos referirnos al inciso 7 del artículo 227 del Código de Enjuiciamiento Criminal y a los casos de *Pueblo* v. *Cortés,* 42 D.P.R. 923 y *Pueblo* v. *Morales,* 45 D.P.R. 192.

■■ El apelante se funda principalmente en el segundo motivo de su apelación, que expone así:

"2.—El veredicto en este caso es *contrario a la prueba.* En efecto, de toda la evidencia ofrecida por el Pueblo de Puerto Rico como por la defensa, resulta probado, fuera de toda duda razonable, que el acusado José María Bernabe al disparar dos tiros de revólver en su propia barbería donde trabajaba, contra Vicente Vigil, actuó en defensa propia de su vida, bajo el fundado temor, por las reiteradas ame-

nazas que le habían sido hechas por Vigil en tal sentido y las cuales le fueron transmitidas por numerosas personas.''

Podría admitirse que Vigil repetidamente hizo amenazas que fueron comunicadas a Bernabe y que éste durante algún tiempo tuvo el temor de recibir grave daño corporal. Si estaba en peligro de daño inmediato o tenía motivo razonable para creer que lo estaba al tiempo en que tuvo lugar la muerte, ello era una cuestión de hecho para el jurado.

La barbería tenía dos puertas, una grande y otra pequeña. La menor se hallaba a la izquierda de la mayor. A la izquierda de la puerta menor había una vidriera que formaba parte de un edificio contiguo conocido por Plaza Store. La prueba de la defensa fué al efecto de que Vigil pasó la puerta mayor de la barbería, se detuvo detrás de la pared que está entre las dos puertas, miró por la puerta pequeña para dentro de la barbería y entonces comenzó a entrar con la mano izquierda en el bolsillo de la chaqueta y la derecha en o cerca del bolsillo trasero del pantalón, cuando fué herido por Bernabe. La prueba de cargo tendió a demostrar que Vigil ya había pasado la barbería, entrado a un edificio ubicado varias puertas más allá, en busca de un médico y que a su regreso se había detenido y estaba parado frente a la vidriera que está a la izquierda de la barbería mirando lo que se exhibía cuando Bernabe miró por la puerta pequeña de la barbería y entonces abrió fuego. Un número de testigos de cargo también declaró que mientras Vigil estaba frente a la vidriera tenía la mano izquierda en el bolsillo de la chaqueta y la derecha en o cerca del bolsillo trasero del pantalón. Algunos de estos testigos también dijeron que Vigil tenía por costumbre llevar las manos en los bolsillos. Uno o más de ellos también declararon que él miraba calle arriba y calle abajo y que la vidriera estaba vacía. Al menos uno de los testigos de cargo declaró que Vigil tenía las manos a los lados, en posición normal. Estaba desarmado. Esta prueba de cargo, de ser creída en su totalidad, o en sus partes esenciales, por el jurado bastaba para justificar un

veredicto condenatorio. Véanse *Pueblo* v. *Díaz,* 16 D.P.R. 70; *Pueblo* v. *Pacheco,* 40 D.P.R. 395; *Pueblo* v. *Milán,* 46 D.P.R. 889; *Molphus* v. *State,* 87 So. 133, 135; 30 C. J. 64, sec. 235; Id. 60, sec. 230; *Mullins* v. *Commonwealth,* 188 S. W. 1079, 1082; *State* v. *Molitz,* 122 P. 86; y *Andrews* v. *State,* 72 So. 753.

◾ El tercer señalamiento se refiere a la exclusión de cierta prueba. La posibilidad de que el resultado hubiera sido distinto, de haberse admitido esta prueba, es muy remota. Por tanto, no estamos preparados para decir que el error, de haberlo, al excluirla fué perjudicial.

El cuarto se refiere a la admisión de cierta prueba que a nuestro juicio era claramente admisible. De igual modo difícilmente podría el error, si se hubiera cometido, considerarse como uno que da lugar a la revocación.

*La sentencia apelada debe ser confirmada.*

Los Jueces Señores Presidente del Toro y Asociado Córdova Dávila no intervinieron.

EN MOCIÓN DE RECONSIDERIRACIÓN

Enero 12, 1937

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

En una moción de reconsideración el apelante dice:

"Este Hon. Tribunal al hacer un análisis de los alegatos y de la transcripción de la evidencia, a los efectos de su resolución en este caso, hace gran hincapié en el análisis de la declaración de un testigo de cargo que no menciona, en el sentido de que dicho testigo declaró que el interfecto 'tenía las manos a los lados, en posición normal, y que estaba desarmado' ".

La transcripción taquigráfica de la declaración de José Laguna, testigo de cargo, cierra con el siguiente incidente:

"Juez: ¿Usted vió en qué posición tenía las manos Vigil cuando usted pasó por el lado de él?
"T.—Sí, señor.
"J.—¿Cómo tenía las manos?

"T.—Él estaba tranquilo, con las manos bajas, mirando a la vidriera.

"J.—¿Usted le vió las manos a él?

"T.—Sí, señor.

"J.—¿No las tenía en el bolsillo?

"T.—No, señor.

"Fiscal.—¿Usted se fijó bien, o no se fijó cómo tenía las manos?

"T.—Sí. Yo lo saludé a él.

"F scal.—Nada más."

Este testigo no dice que Vigil estaba desarmado. No fué nuestro objeto citarle directamente, como tampoco a ningún otro testigo específico, al efecto de que Vigil estuviera desarmado. La aseveración, a nuestro juicio, de que Vigil no tenía arma, fué o intentó ser la aseveración independiente de un hecho. De todos modos, fué un hecho incontrovertido.

Nuestra manifestación de que "al menos uno de los testigos de cargo declaró que Vigil tenía las manos a los lados, en posición normal", no fué una cita directa. Fué sólo una tentativa de expresar en una oración el nervio del testimonio de Laguna, conforme el mismo aparece en el extracto precedente. No fué nuestra intención dar énfasis a ese testimonio. Toda referencia al mismo pudo haber sido omitida sin afectar el resultado ante esta corte.

El apelante ahora sostiene que la pena impuesta por la corte de distrito fué excesiva. Bastaría decir que esta cuestión no fué suscitada por el señalamiento de errores y no es suficiente motivo para una reconsideración. No obstante, podemos agregar que no pasamos por alto este punto al considerar la prueba en su totalidad, y no hallamos tal abuso de discreción que justifique la modificación de la sentencia.

*Debe declararse sin lugar la moción de reconsideración.*

Los Jueces Asociados Señores Wolf y Córdova Dávila no intervinieron.