MARCELINO RIVERA HERNÁNDEZ, demandante y apelante, *v.* NIEVES TARRIDO VÉLEZ, demandado y apelado.

Número 12170.

*Sometido:* 20 de marzo de 1958. *Resuelto:* 24 de marzo de 1958.

*Vicente Palés Matos,* abogado del apelante; *Hon. Secretario de Justicia .J. B. Fernández Badillo, Arturo Estrella, Secretario de Justicia Auxiliar* y *Alfredo Archilla Guenard* y *William Fred Santiago, Fiscal* y *Fiscal Auxiliar del Tribunal Supremo,* respectivamente, abogados del apelado.

*PER CURIAM:* El acusado apelante hizo un pacto suicida con su concubina y la mató. Luego se hizo varios disparos de arma de fuego pero sobrevivió a las heridas que recibió. Se radicó acusación en su contra por asesinato en primer grado la que fué rebajada el día del juicio a una de asesinato en segundo grado. El acusado hizo alegación de culpabilidad del delito así rebajado y fué sentenciado a cumplir una pena de 10 a 20 años de presidio. Tiempo después radicó un recurso de hábeas corpus el cual fué declarado sin lugar donde alegaba indebida asistencia de abogado. Nuevamente radicó otro recurso de hábeas corpus alegando que él no tuvo la debida asistencia de abogado ya que éste le amedrentó para que se declarara culpable. Este segundo recurso fué también declarado sin lugar después de una vista en los méritos. No conforme el acusado interpuso el presente recurso de apelación señalando el siguiente único error:

"Erró el Tribunal Superior, Sala de Mayagüez, al determinar que en el acto de su juicio el demandante-apelante tuvo adecuada representación profesional y de que su alegación de 'culpabilidad' fué voluntaria."

La prueba del peticionario en el recurso de hábeas corpus consistió de su propio testimonio. El fiscal de este Tribunal lo resume así:

"Indicó que se encuentra privado de su libertad a causa de una sentencia que le fuera impuesta el 7 de febrero de 1950 por un delito de asesinato en segundo grado. Compareció a juicio y en sala le presentaron un señor que lo iba a defender, pues era abogado. Manifestó que nunca lo había visto y que

no sabía quién era.  A preguntas del juez indicó que el día que lo trajeron de la cárcel a la corte supo quién era.  'Me llamó para un cuarto y entonces me dijo que le explicara el caso.  Yo me puse a explicarle el caso.'  (T. E. 8.)

"Interrogado por su abogado manifestó que el abogado le dijo que 'debía declararme culpable de segundo grado (sic) porque si no iba a ser la muerte civil mía, porque me iban a imponer la perpetua y no iba a salir más nunca'.  (T. E. 8.)  Continuó diciendo que él quería defenderse, que tenía testigos y que su abogado le dijo que no 'iba a llevar su caso como ese para perderlo'.  Indicó que el consejo del abogado era que se declarase culpable de asesinato en segundo grado y que él (el abogado) no iba a suspender el caso.

"Preguntado si esas palabras de su abogado le infundieron miedo, se manifestó en la afirmativa.  Que luego en sala contestó todo lo que el juez le preguntó según el abogado le iba diciendo y en esa forma se declaró culpable del delito que se le acusaba.  (T. E. 9.)  Luego vuelve a repetir que el abogado le dijo que se declarara culpable para evitarse coger una perpetua 'y morir civilmente'.

"Indicó que el día de la lectura de la acusación el tres de octubre, el abogado hizo alegación de inocencia.  Manifestó el peticionario que él nunca renunció a juicio por jurado, pero dice el acta 'que a solicitud del acusado tiene a éste por desistido de ser juzgado por jurado . . . . .'  (T. E. 12.)  Continuó diciendo que él no quería declararse culpable ni de asesinato en primer grado ni de asesinato en segundo grado, que él lo que interesaba era defenderse.  Terminó diciendo que no recordaba haber visto a su abogado antes del juicio y que su alegación de culpabilidad no fué libre ya que 'fuí amedrentado por el abogado'.  (T. E. 13.)"

De otra parte, el abogado que representó al peticionario en el juicio por asesinato declaró, según también lo resume el Fiscal de este Tribunal en la forma siguiente:

"Que fué el abogado del peticionario, que se entrevistó con el acusado para los efectos del juicio.  Manifestó que el acusado estaba como 'deprimido' y que él le explicó al acusado en cuanto al juicio 'cuál era la situación'.  (T. E. 20.)

"A preguntas del Juez, este testigo indicó que el peticionario le dijo que había matado a su mujer y que luego él (el acusado) se pegó otro tiro, 'como una especie de convenio'.

"Nuevamente a preguntas del Fiscal, manifestó este testigo que 'él estaba en un estado de ánimo que él me decía a mi que quería declararse culpable. Yo deduje que era un buen hombre y estaba en ese estado de arrepentimiento. El hombre decía, "si la hice debo pagar" (T. E. 21). Desde la lectura de la acusación' —continuó declarando— 'hasta el juicio pasaron cerca de cuatro meses y que él vió al acusado en ese tiempo varias veces'.

"Preguntado por el Juez si el acusado tenía testigos, contestó:

" 'Bueno, si hubiera tenido testigos yo los cito'.

" 'Ahora, no puedo recordar ahora'. (T. E. 22.)

"Indicó luego que el acusado hizo alegación de culpabilidad de asesinato en segundo grado, luego de bajarse la calificación del delito que era de asesinato en primer grado. Manifestó que él hubiese deseado que se hubiese visto el caso, desde el punto de vista material, pero que le explicó al acusado 'las consecuencias del asesinato en primer grado'. (T. E. 23.)

"A preguntas del Juez se suscitó el siguiente diálogo:

" '¿Pero la idea de declararse culpable salió del acusado o del compañero?

" 'Bueno, de los dos, como nosotros hablamos varias veces en la cárcel. Señor Juez, el acusado, según los informes que tenía parece que era una buena persona y estaba como deprimido, como en un estado de arrepentimiento.

" '¿Pero en algún momento el acusado le manifestó su deseo de declararse culpable? Él lo que no quería era entrar a juicio. (T. E. 24.)

" '¡Ah, no, no! Él no quería entrar a juicio. Él quería declararse culpable. Él lo que no quería era entrar a juicio.' (T. E. 24.)

"Repreguntado por la defensa, contestó en la siguiente forma:

"Que le había explicado como abogado lo que era asesinato en primer grado. Manifestó que sería amenazador de su parte decirle que si entraba a juicio él podía coger la perpetua, si no se rebajaba a asesinato en segundo grado. Yo nunca le dije: 'si tú no te declaras culpable te fastidias'. (T. E. 25.)

"Veamos una descripción literal de lo que ocurrió después:

" 'P.—¿Entonces a base de la pena fué que se declaró culpable de asesinato en segundo grado, a base de que le convenía por la pena?

" 'R.—Bueno, es lógico que era mucho más la perpetua. Sería por eso, pero yo no puedo saber la mente de él.

" 'P.—¿Él le explicó en qué consistía la prueba de él?

" 'R.—¡Si él no tenía prueba ninguna!

" 'P.—¿Pero usted investigó?

" 'R.—Ni él mismo sabía decir si tenía testigos o no tenía. Casi no hablaba.

" 'P.—Si no hablaba . . . . .

" 'R.—Quiero decir que no cooperaba.

" 'P.—¿El compañero le dijo que tendría la consideración de la corte si se declaraba culpable?

" 'R.—Eso siempre . . . . .

" 'P.—Que si se lo dijo.

" 'R.—Yo se lo dije.

" 'P.—¿Le dijo que cuando el Juez le preguntara si se declaraba culpable libremente que dijera que sí?

" 'R.—No porque ellos lo sabían y si yo les decía cualquier cosa el Juez le preguntaba para cerciorarse.

" 'P.—¿Entonces en qué consistió la defensa?

" 'R.—Ese es el problema, compañero, porque él decía que yo le hice una buena defensa.

" 'P.—¿Usted no insistió con él en que si entraba a juicio podía coger una perpetua?

" 'R.—Yo no le dije nada. Él fué que me dijo a mí que quería declararse culpable. Siempre, siempre.

" 'P.—¿Siempre?

" 'R.—Siempre que iba a verle.

"Hon. Juez:

" 'P.—Compañero, ¿cuando el juez le hacía las preguntas rutinarias de una alegación de culpabilidad, si había mediado alguna promesa o amenaza, usted le decía la forma que tenía que contestar?

" 'R.—¡No señor, cómo voy a estar yo como un apuntador de teatro!

" 'P.—¿Y antes de la celebración de la vista, usted le indicó algo?

" 'R.—No, eso es una cosa que nunca yo lo hacía. Y, además, ellos sabían eso igual que yo' (T. E. 25–26.)

"Más adelante tiene lugar el siguiente diálogo:

" 'P.—¿A qué se debió que él desistiera de ser juzgado por doce jurados, a qué se debió?

" 'R.—Bueno, yo no puedo decir lo que él pensó.

" 'P.—¿Pero él le dió instrucciones?

" 'R.—Bueno, yo hablaba con él y discutíamos y decía que no quería ser juzgado por jurado, que mejor quería ser juzgado por el juez.

" 'P.—Pero ahorita decía que no quería entrar a juicio.

" 'R.—Que prefería el juez a los doce hombres.

" 'P.—¿Cuál era el juez que presidía?

" 'R.—Willis Ramos.'   (T. E. 31.)

"Finalmente interrogó al testigo el Juez que presidía en la forma que sigue:

" 'P.—Compañero, ¿usted le explicó al acusado antes de hacer alegación de culpabilidad que si a él lo condenaba el jurado por asesinato en primer grado la sentencia sería mandatoria de reclusión perpetua, y que si era de asesinato en segundo grado el margen fluctuaría de diez a treinta años?

" 'R.—Si, que era menos.

" 'P.—¿Usted se lo explicó?

" 'R.—Yo le expliqué que en primer grado era perpetua, y en segundo grado de diez para arriba, que era menos pero que era de diez para arriba, pero es imposible que yo pueda recordar lo que yo le decía a todo acusado.' "   (T. E. 33–34.)

Al resolver el recurso el Juez que entendió en el mismo se manifestó como sigue:

"Hon. Juez: De haber sido un veredicto por asesinato en primer grado, la pena es mandatoria de reclusión perpetua. Si el abogado le dijo eso le dijo la verdad. . . . .

"La Corte entiende que la solicitud radicada por el peticionario carece de méritos.

"Entre las cuestiones que se plantean, la única que es propia para ventilarse dentro de este recurso es la alegación que el acusado no tuvo una debida asistencia de abogado.

"A base del testimonio del compañero Rivera Viñas, el cual nos ha merecido entero crédito, nos parece que el acusado estuvo debidamente asistido de abogado, y que el abogado lo ilustró debidamente sobre el riesgo que corría en cuanto al hecho de que de resultar convicto por un delito de asesinato en pri-

mer grado la pena es mandatoria de reclusión perpetua, lo cual en forma alguna puede considerarse como amenaza para hacer alegación de culpabilidad.

"Además, hay una cuestión importante en relación con este caso. Este es el segundo hábeas corpus, porque además hubo un *coram nobis*, y en ninguno de esos dos procedimientos anteriores el acusado levantó esa cuestión que está levantando ahora. De manera que no tenemos base alguna para entender que deba merecernos crédito el testimonio del acusado sobre ese extremo.

"Se declara sin lugar la solicitud de hábeas corpus." (T. E. 43–44.)

El examen que hemos hecho de los autos nos convence que el peticionario apelante no probó que su representación legal fuera una mera formalidad legal y que en su consecuencia no tuviera la debida asistencia de abogado. *González* v. *Jones*, 79 D.P.R. 44. Tampoco estamos convencidos que los consejos del abogado del peticionario constituyeran un amedrentamiento para que éste se declarara culpable del delito de asesinato en segundo grado. Véase *Application of Atchley*, 310 P.2d 15.

*Por los motivos expuestos la sentencia apelada será confirmada.*