JESÚS MARRERO LAFFOSSE, peticionario y apelante, *v.* MÁRSHAL SECCIÓN DE LO CRIMINAL, TRIBUNAL SUPERIOR, SALA DE SAN JUAN y/o ALCAIDE DE LA CÁRCEL DE DISTRITO DE SAN JUAN, demandados y apelados.

*Número*: AP-62-63 *Resuelto*: 16 de diciembre de 1963

---

*César Andréu Ribas* y *Santos P. Amadeo,* abogados del apelante; *J. B. Fernández Badillo, Procurador General, Irene Curbelo* y *Jenaro Marchand, Procuradores Generales Auxiliares,* abogados del apelado.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

El Juez Asociado Señor Blanco Lugo emitió la opinión del Tribunal.

Culpable de asesinato en primer grado fue el veredicto rendido por el jurado en el proceso criminal que se siguió contra el apelante Jesús Marrero Laffosse por haber causado la muerte violenta de Armando Marrero Sánchez. El día 7 de noviembre de 1961 fue sentenciado a la pena de reclusión perpetua. En la misma fecha, a las 9:22 A.M., presentó una petición de hábeas corpus([1]) en la cual, después de relatar extensamente los hechos sobre el trámite judicial que culminó en la convicción, adujo que se encontraba detenido ilegalmente fundándose en que el juicio a que se le sometió no era válido debido a que no tuvo durante el mismo adecuada asistencia de abogado([2]) y a la negativa injustificada del tribunal a sus-

---

([1]) Un examen de los autos originales revela que la petición había sido redactada desde el 26 de octubre, fecha en que se discutió una moción de nuevo juicio presentada por el acusado. Luego se tachó esta fecha y se le sobrepuso la de 7 de noviembre.

([2]) Las extensas alegaciones de la petición en cuanto a este aspecto de la falta de asistencia legal pueden resumirse así: a) al negarse la suspensión de la vista del caso, no se le concedió suficiente tiempo para conseguir un abogado defensor de su propia selección; b) se le impuso un

pender la vista del caso. (³) El tribunal de instancia declaró sin lugar la petición de hábeas corpus. Cinco errores se señalan para solicitar la revocación de esta sentencia. (⁴)

■ El Procurador General solicita se desestime este recurso porque, habiendo el peticionario Marrero instado apelación contra la sentencia de prisión perpetua—recurso que se

---

abogado de oficio para que le representara durante el proceso; c) no se suspendió la vista del caso a pesar de que el abogado de oficio designado manifestó que se sentía enfermo y no estaba preparado.

(³)El incidente sobre suspensión de la vista del caso señalada para el día 27 de septiembre de 1961, y transferida para el 2 de octubre, motivó la renuncia del abogado seleccionado por el acusado para su defensa, quien alegó que para esta última fecha tenía contraído un compromiso previo para representar a unos acusados ante la Sala de Aguadilla, y a la ausencia de una testigo esencial. Ante esta renuncia el tribunal de instancia designó a un abogado de la Oficina de Asistencia Legal para que representara al acusado.

Se recurrió ante nos en 29 de septiembre mediante un recurso intitulado auto inhibitorio para que revisáramos las actuaciones del tribunal a quo y dejáramos sin efecto el señalamiento. Con la petición se acompañaron copias de la transcripción de evidencia del incidente sobre suspensión y de una declaración jurada prestada por la testigo ausente. Consideramos el recurso como de certiorari y lo denegamos. *Marrero v. Tribunal Superior*, Auto Inhibitorio 114, resolución de 30 de septiembre de 1961. De paso señalamos que para la gestión ante este Tribunal, Marrero acudió mediante una petición suscrita por el mismo abogado que había renunciado su representación en el caso criminal.

(⁴)Los errores señalados son los siguientes: Que el juez inferior erró al resolver, en violación de las disposiciones de las Enmiendas V, VI y XIV de la Constitución federal y de la sección 11 del Artículo II de la Constitución de Puerto Rico, que (1) el juez sentenciador no abusó de su discreción al no suspender la vista de la causa criminal del peticionario debido a la ausencia justificada de su abogado, privando al peticionario, por lo tanto, del derecho constitucional a ser defendido por su propio abogado; (2) el juez sentenciador no abusó de su discreción al no darle al peticionario suficiente tiempo para conseguir un abogado de su propia selección; (3) el juez sentenciador no abusó de su discreción al no suspender la vista del caso a solicitud del abogado de oficio nombrado para defender al peticionario, por el fundamento de no estar preparado y por sentirse enfermo, privando así al peticionario de asistencia legal efectiva; (4) el peticionario tuvo una asistencia legal activa y efectiva en el juicio por asesinato en primer grado celebrado ante el juez sentenciador en el Tribunal Superior de Puerto Rico, Sala de San Juan; y, (5) el juez sentenciador no abusó de su discreción al imponer al peticionario un abogado de oficio para que le defendiera.

encuentra aún pendiente ([5]) —dicha apelación constituye un remedio adecuado para ventilar las cuestiones que se plantean en el hábeas corpus. Así es en efecto. En *Chamberlain* v. *Delgado*, 82 D.P.R. 296 (1961), nuestra más reciente expresión sobre el particular, dijimos:

"Como regla general no se concederá un auto de hábeas corpus en sustitución de un recurso de apelación, *Irvin* v. *Dowd*, 359 U.S. 394 (1959); *United States* v. *Hayman*, 342 U.S. 205 (1952); *Sunal* v. *Large*, 332 U.S. 174 (1947); *Frisbie* v. *Collins*, 342 U.S. 519 (1952); *Adams* v. *United States*, 317 U.S. 269 (1942); cf. *Cito* v. *United States*, 283 F.2d 49 (1960); *Commonwealth* v. *Taylor*, 165 A.2d 390 (1960); *People* v. *Walker*, 206 N.Y.S.2d 377 (1960).([3]) [Véanse además, Sedler, *Hábeas Corpus in Pennsylvania after Conviction*, 1959, 20 U. Pitt. L. Rev. 652; *The Use of Habeas Corpus for Collateral Attacks on Criminal Judgments*, 1958, 36 Cal. L. Rev. 420; *Habeas Corpus—Exhaustion of Remedies Held to Require Timely Appeal*, 1948, 97 U. Pa. L. Rev. 285; cf. *Habeas Corpus—Use as a Remedy Where the Appeal Process Has Been Exhausted*, 1948, 46 Mich. L. Rev. 570.] Idéntica regla adoptamos desde los albores de nuestra jurisprudencia, *Ex parte Mauleón*, 4 D.P.R. 123, 128 (1903); *Ex parte Bird*, 5 D.P.R. 247 (1904); *Ex parte Díaz*, 7 D.P.R. 153 (1904); *Ex parte Cintrón*, 5 D.P.R. 90 (1904); *Ex parte Rosa*, 8 D.P.R. 132 (1905), y desde entonces nos hemos adherido a ella en forma consistente, *Ex parte Dessús*, 11 D.P.R. 386 (1906); *Ex parte Lebrón*, 16 D.P.R. 662 (1910); *Pueblo* v. *Burgos*, 18 D.P.R. 72 (1912); *Ex parte Sánchez*, 18 D.P.R. 177 (1912); *Ex parte Huertas et al.*, 22 D.P.R. 524 (1915). Sin embargo, cuando median circunstancias excepcionales, se ha expedido el auto irrespectivamente de que haya una apelación pendiente. *Sunal* v. *Large*, supra; *Valentín* v. *Torres*, 80 D.P.R. 463 (1958); *Ex parte Hernández Laureano*, 54 D.P.R. 416 (1939). Cf. *Brown* v. *Allen*, 344 U.S. 443 (1953). La existencia de estas circunstancias excepcionales es cuestión a determinarse después de considerar los hechos envueltos en cada caso. *Frisbie* v. *Collins*, 342 U.S. 519 (1952). Aun cuando medien estas circunstancias excepcionales no se ejercitará la discreción si las cuestiones pueden levantarse en apelación.

---

([5]) El expediente de apelación se radicó en este Tribunal en 6 de noviembre de 1963 bajo el número CR-63-341.

*Larson* v. *United States,* 275 F.2d 673 (5 Cir., 1960) ; *Brown* v. *Allen,* 344 U.S. 443 (1953). En *Pueblo* v. *Burgos,* 18 D.P.R. 72 (1912) resolvimos que cuando un acusado presenta la defensa de haber sido expuesto dos veces por el mismo delito y la corte oye la prueba para establecerla y la desestima, esta resolución no puede revisarse por hábeas corpus, pues en tales casos la ley concede 'el recurso amplio de apelación.' En el mismo sentido, véase, *Ex parte Huertas et al.,* 22 D.P.R. 524 (1915). Véase, anotación en 8 A.L.R.2d 285 y *Ex parte Nielsen,* 131 U.S. 176 (1889), cf. *Fournier* v. *González,* 269 F.2d 26 (1959)."
Véase además, *Turpin* v. *Sacks,* 291 F.2d 223 (6th Cir. 1961).

■ No cabe duda de que los fundamentos aducidos en la petición de hábeas corpus para impugnar la validez de la sentencia—negativa a suspender el juicio y falta de asistencia legal—pueden ser planteados como errores en la apelación. *Pueblo* v. *Cordero,* 82 D.P.R. 379 (1961) ; cf. *Pueblo* v. *Pérez Suárez,* 83 D.P.R. 371 (1961). Sin embargo, durante la vista celebrada el apelante insistió en que como el juez de instancia expidió el auto solicitado y celebró la vista correspondiente, este Tribunal está obligado a pasar sobre los méritos de los errores señalados en el presente recurso aun cuando se encuentre pendiente la apelación interpuesta contra la sentencia de reclusión perpetua. La cuestión relacionada con la improcedencia del auto dada la disponibilidad del recurso de apelación no fue planteada en momento alguno ante el tribunal a quo. Además, aunque así se hubiese hecho, en la petición se alegó la existencia de circunstancias extraordinarias para aparentemente justificar el ataque a la sentencia, no obstante intentarse apelar de la misma, ([6]) y esto muy bien pudo haber inducido al tribunal a expedir el auto.

■ Recientemente, en *Fay* v. *Noia,* 372 U.S. 391 (1963), el Tribunal Supremo de Estados Unidos sostuvo que los

---

([6]) En la petición se alude a que el reo "no puede obtener fianza mientras *se ventila su apelación*", pero en realidad el escrito de apelación se radicó a las 3:56 P.M. del día 7 de noviembre, después de haberse presentado la solicitud de hábeas corpus.

tribunales federales tienen facultad para considerar recursos de hábeas corpus aun cuando el peticionario haya omitido agotar los remedios que la ley estatal le concede para impugnar una convicción cuando estos remedios *no están disponibles* al momento de presentarse la petición. Esta expresión constituye un reconocimiento a la doctrina enunciada al efecto de que *deben agotarse los remedios disponibles en las cortes estatales* antes de recurrirse al hábeas corpus. Como hemos visto, cuando se radicó la solicitud de hábeas corpus Marrero no sólo disponía del recurso de apelación, sino que efectivamente lo utilizó. Véanse, *Smith* v. *Mississippi*, 373 U.S. 238 (1963) ; *Bartone* v. *United States*, 375 U.S. 52, 32 L.W. 3162.

 Como adelantamos, el apelante pretende sostener que median las circunstancias extraordinarias que justifican recurrir al hábeas corpus, aun cuando se encuentra pendiente una apelación contra la sentencia impugnada, fundándose en que "por haber sido condenado a sufrir reclusión perpetua, no puede obtener fianza mientras se ventila su apelación; que ésta tendrá que esperar su turno en cuanto a transcripción de evidencia, aprobación de la misma y legajo de sentencia; por lo que el acusado aquí peticionario tendrá que permanecer preso durante un número de meses en virtud de una sentencia dictada sin jurisdicción." No podemos convenir en que la circunstancia señalada permita recurrir al hábeas corpus, pues precisamente, y considerando la única cuestión de fondo constitucional que se plantea, la mejor forma de demostrar que el peticionario no tuvo una adecuada asistencia legal debe surgir de las actuaciones del abogado que le fuera designado, según éstas aparecen de la transcripción de la evidencia. *Pueblo* v. *Cordero*, supra; *Rivera* v. *Tarrido*, 80 D.P.R. 211 (1958) ; cf. *Santana Rodríguez* v. *Piñero, Supte.*, 86 D.P.R. 596 (1962) ; *Schlette* v. *People of State of California*, 284 F.2d 827 (9th Cir. 1960) ; *Commonwealth* v. *Banmiller*, 139 A.2d 918 (Pa. 1958) ; *United States* v. *Banmiller*, 205 F.Supp.

123 (DC ED Pa. 1962).[7] Arguye el apelante a este respecto que en la vista del hábeas corpus el abogado que defendió al reo admitió expresamente que no estaba preparado y se encontraba enfermo durante el curso del proceso. Sobre este particular el juez a quo, después de examinar toda la prueba, hizo determinaciones de hechos contrarios a las pretensiones del apelante.[8] Parece claro que las manifestaciones de dicho abogado no son más que la expresión de su propia opinión, y que en verdad la mejor forma de esclarecer si le brindó a Marrero una adecuada defensa es examinando sus actuaciones según éstas surgen de la transcripción de eviden-

[7] Meros errores o equivocaciones del defensor no justifican que se deje sin efecto una sentencia, a menos que se trate de una situación que haya convertido el proceso en una farsa o negación palmaria de la justicia. *Pueblo* v. *Díaz Martínez,* 87 D.P.R. 691 (1963) ; *Pueblo* v. *Torres,* 81 D.P.R. 678 (1960) ; *United States* v. *Pate,* 312 F.2d 161 (7th Cir. 1963) ; *Commonwealth* v. *Myers,* 190 A.2d 365 (Pa. 1963) ; *State* v. *Tahash,* 115 N.W.2d 921 (Minn. 1962).

[8] "El Lcdo. . . . se graduó en 1957 y empezó a ejercer su profesión en noviembre de ese mismo año. Fue asesor jurídico de la policía y en el desempeño de los deberes de su cargo en ocasiones actuaba como defensor y otras como fiscal privado. Desde septiembre de 1960, actúa en el Tribunal Superior como defensor público. Esta plaza la ocupó originalmente en Humacao y en la actualidad la desempeña en San Juan. Ha intervenido en numerosos y variados casos por jurado aunque para el 3 de octubre de 1961 nunca había defendido un caso de asesinato aunque sí había defendido casos de Ataque para Cometer Asesinato. El Lcdo. . . . es un abogado inteligente, luchador, y trabajador. Estuvo disponible para prestarle servicios al acusado y empezar a preparar el caso desde el momento en que se le encomendó esa misión."

". . .

"Al llamarse el caso el día 2 de octubre, el Lcdo. . . . alegó no estar preparado por no haber tenido la oportunidad de entrevistar al acusado. En vista de ello se suspendió el juicio para el día siguiente, 3 de octubre y se puso a disposición del abogado a todos los testigos del fiscal. El día 3 de octubre y a pesar de haber entrevistado ampliamente a los testigos de cargo y al acusado, el defensor reprodujo la moción de suspensión del 26 de septiembre fundando su petición en los mismos argumentos. Alegó también que no se sentía bien de salud pero concluimos como cuestión de hecho, que, aunque su estado de salud no fuese el ideal, el mismo no afectó en forma alguna el desempeño de su gestión profesional."

cia. (⁹) La prueba *aliunde* del récord de la causa criminal—las constancias de los procedimientos habidos ante el tribunal de instancia en el presente recurso de hábeas corpus—en nada mejora la posición del apelante, pues en sus aspectos fundamentales, y especialmente en aquellos en que hubo conflicto, no estableció la falta de adecuada asistencia legal o la controversia fue dirimida en contra de éste. Es por eso que insistimos en que la alegación sobre falta de asistencia legal debe sustanciarse dentro del procedimiento de apelación ya entablado. Correspondía al apelante establecer que no tuvo adecuada asistencia legal. Sin embargo, se limitó a presentar fragmentos de los testimonios que se ofrecieron en el curso del proceso que culminó en su convicción. El efecto práctico de nuestra opinión es precisamente ofrecerle al apelante una nueva oportunidad de establecer la alegación básica en demanda de su libertad, obligación que no descargó en forma adecuada en el presente procedimiento.

▬▬ Finalmente, se insiste vigorosamente en que el acusado tenía derecho a ser defendido por un abogado de su propia selección. Refiriéndose al derecho a asistencia legal, el Juez Sifre en la opinión emitida en *Romero* v. *Jones, Alcaide*, 78 D.P.R. 572, 577–578 (1955), dijo:

"Ese derecho debe ser celosamente protegido por los tribunales, pero el procesado no debe ser renuente en ejercitarlo, [citas], ni usarlo para obstaculizar el trámite normal de las causas. No debe esperar hasta el último instante para nombrar abogado—a menos que lo impidan razones meritorias—para después, si el resultado del proceso le es adverso, y basándose en su propia omisión y en su propia falta de diligencia, sostener que se le negó el derecho. Sancionar lo que aquí repudiamos equivaldría a establecer un precedente en extremo perjudicial para la ordenada administración de justicia en la esfera de lo penal. Tendría el efecto de concederle a los inculpados el dominio sobre

---

(⁹) En la evaluación del testimonio de dicho abogado el tribunal afirmó que "considerada la actitud y comportamiento del testigo, creemos que su declaración es prejuiciada y poco digna de crédito."

los calendarios de las cortes, colocándoles en condiciones de resolver cuándo han de ventilarse los procesos, proporcionándoles fácil medio para lograr la posposición de las vistas a su antojo, con simplemente aguardar hasta el último instante para designar o cambiar abogado."

Es ésta la mejor contestación al planteamiento. Véanse además, *Orona Merced* v. *Alcalá, Alcaide*, 87 D.P.R. 678 (1963); *Pérez Gómez* v. *Delgado, Jefe*, 83 D.P.R. 346 (1961); *Flores* v. *Bravo*, 79 D.P.R. 505 (1956).

*Por los fundamentos expuestos se desestimará el recurso de apelación interpuesto contra la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 6 de diciembre de 1961.*

El Juez Presidente Señor Negrón Fernández disintió.

—O—

Voto disidente del Juez Presidente Señor Negrón Fernández

La cuestión relativa a la falta de adecuada y efectiva asistencia de abogado y oportunidad de defensa, planteada en el presente recurso, no descansa exclusivamente en las constancias del récord de los procedimientos seguidos en el juicio de la causa criminal, que fue apelada. En la vista del hábeas corpus se pasó prueba ante el juez que conoció del mismo, y esa prueba, *aliunde* del récord, no la tendremos en la apelación de la causa criminal. En consecuencia, no podríamos afirmar, como hicimos en *Chamberlain* v. *Delgado*, 82 D.P.R. 296, 302 (1961), que las cuestiones planteadas en este recurso de hábeas corpus "pueden ser todas consideradas en la apelación que se encuentra pendiente ante este Tribunal." Creo procedente resolver en sus méritos la presente apelación haciendo referencia, si fuere necesario, a los fines de la disposición de la misma—como se hizo en *Chamberlain*—a las constancias que surjan del récord ante nos en la apelación interpuesta en la causa criminal.