EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JESÚS MARRERO LAFFOSSE, acusado y apelante.

*Número:* CR-63-341        *Resuelto:* 30 de junio de 1967

*José Torres Ortiz,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* e *Irene Curbelo, Procuradora General Auxiliar,* abogados de El Pueblo.

El Juez Asociado Señor Blanco Lugo emitió la opinión del Tribunal.

En *Marrero Laffosse* v. *Márshal, Tribl. Superior,* 89 D.P.R. 564 (1963), tuvimos ocasión de referirnos a los antecedentes más importantes de este recurso relacionados con el planteamiento de falta de adecuada asistencia de abogado que se invocó como fundamento en un procedimiento de hábeas corpus para impugnar la sentencia de reclusión perpetua que por el delito de asesinato en primer grado le fue impuesta al apelante. Apoyándonos en *Chamberlain* v. *Delgado,* 82 D.P.R. 296 (1961), sostuvimos entonces que la presente apelación entablada por Marrero constituia un recurso adecuado para dirimir tal cuestión, especialmente considerando que "la mejor forma de demostrar que el peticio-

188

nario no tuvo una adecuada asistencia legal debe surgir de las actuaciones del abogado [de oficio] que le fuera designado, según éstas aparecen de la transcripción de la evidencia." Específicamente señalamos que la prueba *aliunde* del récord de la causa criminal, o sea las constancias de los procedimientos habidos ante el tribunal de instancia dentro del recurso de hábeas corpus, en sus aspectos fundamentales, y especialmente en aquellos en que hubo conflicto, no sustanciaban la alegación de falta de adecuada asistencia legal. (1)

■ Los fundamentos básicos que ahora se aducen para apuntalar el señalamiento sobre defensa inadecuada, no sólo reproducen lo que se alegó previamente en el hábeas corpus, sino que se elaboran con referencia a incidentes específicos de la transcripción. Un examen detenido de las constancias de los autos de *ambos recursos* nos convence de que este apuntamiento no puede progresar. (2) Dentro de las circuns-

---

(1) Entre los hechos que entonces consideramos se encuentran las alegaciones de que el abogado que defendió al reo admitió expresamente que no estaba preparado para la vista y que se sentía enfermo durante el proceso, así como las relativas a su capacidad profesional. Véase el escolio 8 de la opinión emitida en *Marrero Laffosse* v. *Márshal, Tribl. Superior,* supra.

(2) Para una mejor comprensión de este planteamiento resumimos a continuación los hechos salientes de la tramitación habida en relación con la acusación presentada contra el apelante.

La acusación, que se radicó en 10 de enero de 1961, le imputó al acusado haber causado la muerte de un semejante el día 20 de noviembre de 1960. La lectura de la acusación tuvo lugar el día 7 de febrero y al acto compareció el acusado asistido por el Lic. César Andreu Ribas. Se le concedió un término de quince días para formular alegación y se señaló la vista del caso para el día 5 de junio de 1961. Como no se hizo alegación alguna, el tribunal ordenó que se anotara la de inocencia y una solicitud de juicio por jurado, confirmando además el señalamiento para la fecha indicada. El 5 de junio, por estipulación de las partes y por no estar la defensa preparada para entrar a la vista del caso, se suspendió el señalamiento, disponiéndose que un nuevo señalamiento sería hecho por el Secretario. En o antes del 3 de agosto, se fijó el 27 de septiembre para la celebración del juicio. A las 3:56 P.M. del día 26 de septiembre, el acusado solicitó nuevamente la suspensión aduciéndose que 1) una testigo esencial de defensa no había podido ser localizada, y, 2) que para el día 28 el abogado del acusado tenía señalada la continuación de una vista en un pleito civil, y "de comenzarse la vista de la causa cri-

tancias del caso, el abogado designado por el tribunal tuvo tiempo suficiente para conferenciar con el acusado, interrogar los testigos que se proponía presentar el fiscal, y preparar la prueba de defensa, como en efecto lo hizo. No empece tratarse de un asesinato en primer grado, en verdad no se trataba de un caso complicado. Las teorías de las partes eran sencillas, las usuales y corrientes en asuntos de esta naturaleza. La prueba de cargo tendía a demostrar que el acusado había dado muerte a la víctima, después de acecharle, sin que mediara provocación. La del apelante, tendía a establecer una defensa propia. La lectura de la transcripción no revela indefensión; lejos de ello, el abogado que asistió al apelante lo hizo en forma competente, hábil, diligente, esmerada, siempre atento a promover aquellos plan-

minal . . . ésta habría de tomarse varios días con perjuicio de los otros señalamientos que han costado inmenso trabajo y diligencio para acomodar los intereses de todas las partes interesadas." El fiscal se opuso a la suspensión. El tribunal transfirió la vista para el lunes siguiente, 2 de octubre, y dispuso que en caso de que el Lic. Andreu no pudiera comparecer en la dicha fecha se designaba al Lic. W. Figueroa Vélez para que representara al acusado. En ese acto el Lic. Andreu informó que se retiraba como abogado defensor ya que tenía un compromiso anterior para representar a unos clientes ante la Sala de Aguadilla. En 29 de septiembre el Lic. Andreu, en representación de Marrero, recurrió ante nos con una solicitud que intituló auto inhibitorio para que revisáramos las actuaciones del tribunal a quo y dejáramos sin efecto el señalamiento. Consideramos el recurso como uno de *certiorari* y nos negamos a expedir el auto. El día 2 de octubre, el Lic. Figueroa solicitó la suspensión por no estar preparado para asumir la defensa, a lo cual el tribunal accedió, posponiendo el comienzo de la vista para las 2:00 P.M. Nuevamente se insistió en la suspensión para que el defensor pudiera entrevistar los testigos de cargo. Se transfirió la vista para el siguiente día y se puso dicha prueba a su disposición. En esta última ocasión el Lic. Figueroa informó que como resultado de su entrevista con los testigos de El Pueblo habían surgido ciertos extremos que creía necesario investigar ulteriormente, pero no le explicó al tribunal en qué consistían estos extremos, ni demostró su pertinencia o las gestiones que había hecho sobre el particular. En otras palabras, no se colocó al juez a quo en condiciones de ejercitar su discreción. También se alegó que el abogado se sentía enfermo, expresando el tribunal que no presentaba tal aspecto. Después de comenzado el proceso—durante el segundo día—se decretó un receso a las 4:00 P.M. para facilitar al defensor que se sometiera a ciertas pruebas de laboratorio.

teamientos que favorecían su posición y a formular los reparos debidos a la prueba que le comprometía. Si algo revela el contrainterrogatorio a los testigos de cargo es que estaba bien familiarizado con la prueba.

■ Se hace referencia a varios incidentes aislados como ejemplos de la falta de capacidad y preparación del abogado que defendió al apelante. Los hemos examinado. Se trata de meras trivialidades en la mayoría de las situaciones, y en las demás, ninguno puede afirmarse que le causara perjuicio sustancial. Repetimos ahora que meros errores o equivocaciones del defensor no justifican que se deje sin efecto una sentencia, a menos que se trate de una situación que haya convertido el proceso en una farsa o negación palmaria de la justicia. *Pueblo* v. *Díaz Martínez*, 87 D.P.R. 691 (1963); *Pueblo* v. *Torres*, 81 D.P.R. 678 (1960).

■ En el fondo de todo se encuentra la pretensión del apelante de haber sido defendido por un abogado de su propia selección. Siempre hemos compartido ese criterio, pero ello no puede utilizarse para obstaculizar el trámite normal de un proceso criminal, *Pueblo* v. *Rodríguez Correa*, 88 D.P.R. 653 (1963), especialmente cuando, como en el presente caso, tal hecho no perjudicó al acusado por haber éste tenido una defensa adecuada. Además, concurre aquí la circunstancia adicional de que, a petición del abogado designado, se citó al letrado escogido por el acusado, y ambos conferenciaron por más de una hora durante un receso que para ello decretó el tribunal. Si bien es cierto que esta entrevista tuvo lugar antes de comenzar el segundo día del proceso, durante el primer día se había procedido a escoger el jurado y como único testigo declaró el médico que practicó la autopsia de la víctima. No había comenzado aún a desfilar la prueba sobre las circunstancias en que se cometió el delito.

Examinemos brevemente los otros errores que se apuntan por el apelante.

2—Durante el *voir dire* de uno de los miembros del jurado el abogado de la defensa le preguntó: ". . . ¿usted estima que el acusado debe probar su defensa propia o que le compete al fiscal demostrar que la muerte es injustificada?" Ante la objeción del fiscal, el juez instruyó a los miembros del panel presentes que correspondía al Estado establecer la culpabilidad del acusado fuera de duda razonable, y que éste nada venía obligado a probar.

Se señala que esta actuación del tribunal al no permitir se contestara la pregunta constituyó un error porque ello impidió que el jurado revelara su opinión personal sobre un particular que podía afectar los derechos del acusado. La frivolidad de este señalamiento es obvia. No sólo parte de una base puramento especulativa, pues presupone una respuesta determinada, sino que la pregunta es a todas luces impropia. Cualquier contestación no hubiese revelado la capacidad del jurado para actuar como tal o su parcialidad real o implícita. Arts. 225, 226 y 227 del Código de Enjuiciamiento Criminal, 34 L.P.R.A. secs. 679, 680 y 681. Cf. Regla 121 de las de Procedimiento Criminal de 1963; *Pueblo* v. *Vázquez*, 68 D.P.R. 67 (1948); *Pueblo* v. *Bernabe*, 50 D.P.R. 812 (1936).

3—El cuarto error se refiere a la resolución del tribunal permitiendo a la viuda de la víctima declarar que en su presencia otro testigo—Joseph Berríos—le dijo al acusado: "Usted ha matado a ese hombre, entregue esa arma." Sostiene que se trata de prueba de referencia y que no correspondía efectivamente con las manifestaciones de Berríos. No es necesario elaborar sobre este apuntamiento pues el propio Berríos declaró en forma sustancialmente igual, y de todas formas, ello no perjudicó al apelante.

4—El Art. 261 del Código de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 740, requería "que cada vez que suspenda la sesión el tribunal, también deberá éste advertir a los jurados, ya se les permita separarse o queden a cargo

de oficiales del tribunal, que es su deber no conversar entre sí, ni con otra persona, acerca de ningún particular relacionado con el proceso, ni formar o expresar juicio alguno sobre el mismo, hasta que la causa haya sido sometida definitivamente a su deliberación." Sostiene el apelante que en cuatro distintas ocasiones el tribunal omitió cumplir con el deber que le impone la disposición transcrita al decretar recesos sin instruir propiamente a los jurados. Se refiere expresamente a situaciones que aparecen a las págs. 126, 168, 257 y 360 de la transcripción de evidencia.

Se desprende de una lectura de la transcripción que en tres de las ocasiones señaladas no se trataba realmente de la "suspensión" de la sesión del tribunal, sino de breves recesos para los siguientes propósitos: permitir al abogado del acusado que diera lectura a la declaración de la viuda del occiso a los fines de facilitar su contrainterrogatorio (pág. 126), atender otros asuntos del tribunal (pág. 168), y permitir que la estenotipista cambiara la cinta de la estenotipia (pág. 360). La impresión que derivamos es que en todas estas ocasiones el jurado permaneció en sala y no se retiró. En cuanto al receso decretado al finalizar la sesión del día 4 de octubre (pág. 257), si bien de la transcripción no aparece que se le hicieran al jurado las advertencias de rigor, la minuta correspondiente expresa que se decretó el receso hasta el siguiente día "permitiendo al jurado retirarse libremente a sus hogares *previa las advertencias de ley*." Resulta pues que los hechos no parecen sostener el apuntamiento de error.

█ Aunque pudiera decirse que en las ocasiones indicadas se omitió hacer las advertencias, ello no constituiría motivo para revocar la sentencia, a menos que se demostrare que el acusado sufrió algún perjuicio. Así se ha sostenido invariablemente en California al interpretar el Art. 1122 del Código Penal, 50 West's *Annotated California Codes*, pág. 19, de donde procedía nuestro Art. 261, *People* v. *Linden*,

338 P.2d 397, 411 (1959); *People* v. *Williams*, 275 P.2d 513 (1954); *People* v. *Leavitt*, 279 Pac. 1056 (1923); Stout, *Appellate Review of Criminal Convictions*, 43 Calif. L. Rev. 381, 403 (1955). Igual norma prevalece en otras jurisdicciones, *State* v. *Thompson*, 117 N.W.2d 514 (Iowa 1962). Además se trata de un proceso que se prolongó durante cuatro días y en el cual se decretaron por lo menos diecisiete recesos. En todos los otros trece recesos, el tribunal cumplió con hacer las admoniciones de ley, y fácil es concluir que el jurado ya estaba suficientemente advertido de las limitaciones que se prescriben para estas situaciones. Cf. *Pueblo* v. *Goitía*, 41 D.P.R. 941 (1931), en donde resolvimos que cuando se ha instruido al jurado sobre la conducta a observar al abandonar la sala del tribunal, la corte en recesos posteriores no está obligada a repetir palabra por palabra su primera instrucción y que la ley queda cumplida con llamarles la atención hacia la advertencia general anterior. Terminaremos diciendo que el propio apelante admite que no puede demostrar que de haberse cometido las omisiones señaladas, ello le fuera perjudicial.[3]

5—Mientras se recibía el testimonio del propio acusado el tribunal se negó a admitir ciertas manifestaciones que éste le hizo a un detective varias horas después de ocurridos los hechos. Los disparos ocurrieron cerca de las 9:00 P.M. El acusado fue conducido en compañía de la señora Lydia Ríos, a un cuartel de la policía cercano, y de allí se le condujo al Hospital Municipal donde se le brindó atención médica. Nuevamente se le trasladó al Cuartel de la Calle Loíza, y luego se le transfirió al Cuartel General en Hato Rey. En espera del fiscal investigador, el acusado departió con la señora Ríos. El fiscal y el detective llegaron juntos. Fue entonces que Marrero le hizo al detective las manifes-

---

[3] Sobre la separación de miembros del jurado después de haberse iniciado el proceso de deliberación, véase *Pueblo* v. *Meléndez Burgos*, 90 D.P.R. 792 (1964).

taciones que se excluyeron, y que obviamente eran de naturaleza exculpatoria.

No están presentes las garantías de contemporaneidad y espontaneidad que pudieran haber justificado su admisión en evidencia.

■ 7—Los otros errores señalados carecen de méritos. La lectura del récord demuestra que la intervención del juez tendía a aclarar ciertos extremos de los testimonios ofrecidos en su función legítima de velar porque se condujeran los procedimientos en forma ordenada. Los reparos a las instrucciones carecen de fundamento, pues las trasmitidas siguen sustancialmente pronunciamientos de este Tribunal en *Pueblo* v. *Méndez*, 74 D.P.R. 913 (1953); *Pueblo* v. *Blanco*, 77 D.P.R. 767 (1954) y *Pueblo* v. *Saltari*, 53 D.P.R. 893 (1938), y se ajustan a nuestra más reciente expresión en *Pueblo* v. *Túa*, 84 D.P.R. 39 (1961), sobre los elementos de ambos grados del delito de asesinato y a la defensa propia. Tampoco constituyó error ordenar a la defensa que le devolviera al fiscal las declaraciones juradas de los testigos de cargo que se le habían facilitado. Cf. *Pueblo* v. *Pacheco*, 83 D.P.R. 526, 537 (1961).

*No habiéndose cometido ninguno de los errores señalados, se confirmará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 7 de noviembre de 1961.*

El Juez Presidente Señor Negrón Fernández disintió. El Juez Asociado Señor Santana Becerra no intervino.

—O—

Voto disidente del Juez Presidente Señor Negrón Fernández

San Juan, Puerto Rico, a 30 de junio de 1967

En *Marrero Laffosse* v. *Márshal, Tribl. Superior*, 89 D.P.R. 564 (1963), desestimamos la apelación instada contra una sentencia que declaró sin lugar una solicitud de

hábeas corpus, fundándose este Tribunal en que la alegación sobre falta de adecuada asistencia legal debía sustanciarse dentro del procedimiento de apelación interpuesto contra la sentencia condenatoria en la causa principal. Al disentir en dicha ocasión apunté que la referida cuestión no descansaba "exclusivamente en las constancias del récord de los procedimientos seguidos en la causa criminal, que fue apelada" sino también en prueba, *aliunde* del récord, pasada en el procedimiento de hábeas corpus, que no habríamos de tener ante nos al considerar la apelación contra la sentencia en la causa criminal.

En su recurso de apelación contra la sentencia en la causa criminal, el apelante se enfrenta ahora a la decisión de *Marrero Laffosse* v. *Márshal, Tribl. Superior*, en la cual, a pesar de desestimarse el recurso de hábeas corpus porque "dicha apelación constituye un remedio adecuado para ventilar las cuestiones que se plantean en el hábeas corpus", se intentó pasar juicio sobre la suficiencia de la prueba *aliunde* del récord de dicha causa, que no está en el récord de apelación ante nos ahora, indicándose allí que tal prueba no sustanciaba la alegación de falta de adecuada asistencia legal que se hacía en el procedimiento de hábeas corpus.

Como se ha hecho patente, la alegación relativa a la adecuada asistencia de abogado ha sido fragmentada y la cuestión, que pudo haber sido considerada en su totalidad dentro del hábeas corpus la reducimos ahora a las constancias del récord de apelación.

El curso de acción tomado entonces limitó la consideración que en este recurso, se da a dicha cuestión. Sin prejuzgar la misma en sus méritos, la reiteración de lo que constituye, a mi juicio, un doble error, me hace disentir.